ADKINS *v.* HOSKINS.

Opinion delivered March 5, 1928.

1. CANCELLATION OF INSTRUMENTS—SUFFICIENCY OF PROOF.—The cancellation of an executed contract is the assertion of the most extraordinary power of the court of chancery, which ought not to be exercised except in a clear case on strong and convincing proof.

2. CANCELLATION OF INSTRUMENTS—SUFFICIENCY OF PROOF.—Courts will not decree a cancellation of an executed contract on the uncorroborated evidence of plaintiff, unless it is clear, unequivocal and decisive.

3. FRAUD—MISREPRESENTATIONS AS TO MATTERS OF LAW.—As a general rule, fraud cannot be predicated on misrepresentations as to

matters of law, nor upon opinions on questions of law based on facts known to both parties, nor upon representations as to what the law will not permit to be done, especially when the representations are made by the avowed agent of the adverse interest.

Appeal from Johnson Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Jesse Reynolds,* for appellant.

*Patterson & Patterson,* for appellee.

MEHAFFY, J.   The appellants brought suit in the Johnson Chancery Court to cancel and set aside deeds to certain property in Johnson County, Arkansas, which deeds were executed by appellant to appellee, George O. Patterson, Jr., at the instance of appellee, J. D. Hoskins.

The plaintiff alleged that he was a citizen and resident of Johnson County, and that defendant George O. Patterson, Jr., is a resident of Johnson County; that the defendant J. D. Hoskins is a resident of Greene County, and the defendant Gladys H. Adkins is a resident of Hot Springs, Arkansas.

The appellant alleged in his complaint that, prior to the second day of July, 1926, he was the owner of the land described in his complaint; that he and Gladys H. Adkins were married in Texas, and lived together as husband and wife until recently; that they got along together as husband and wife, and never had any trouble of any kind. Gladys H. Adkins was a teacher in the city schools of Hot Springs, Arkansas, but returned home on the 21st day of April, 1926, and remained at home until the 20th day of May, when she received a telegram from her mother at Floydada, Texas, telling her to come to Texas at once; that she left on the train that afternoon, stating that she would return as soon as conditions would permit; that, when she arrived at her mother's home, she wrote plaintiff a letter that she would return as soon as her mother's condition permitted; that, during the month of June, while she was with her mother, she wrote appellant several letters, all of which were very affectionate, and appellant was expecting her to return home very

soon; that, on the second day of July, 1926, she returned to Clarksville with John D. Hoskins, an attorney residing at Paragould, Arkansas; that, while appellant was busy at work, the said J. D. Hoskins came to his home, telling him that his wife had decided that she was not going to live with him any longer, and wanted a divorce and a division of the property, and he, Hoskins, had gone into the matter thoroughly, and that she had contributed certain funds from her own property in the amount of $1,400, which she was entitled to recover from him; that she had taught school at certain times, and did other work, from which she had earned $2,366, that she was entitled to recover from him this amount, with interest at 6 per cent., making a total of $3,766; that, in addition thereto, she was entitled to recover one-half of all his property, both real and personal; that Hoskins had looked up the value of their property, and that Mrs. Adkins was entitled to $7,500 or $8,000.

Plaintiff advised Hoskins that he was alarmed at the situation, did not understand this turn of affairs; that he wanted to see his wife, and wanted to talk with her, and inquired where she was, at which the defendant Hoskins told him that she was at the hotel, and that he would bring her up at one o'clock, and that at one o'clock the defendant Hoskins returned, and told him that his wife said she would not talk to him, and restated the matter with reference to his property rights and the division of his property, and stated that she would recover this amount in any event, and, unless he settled it without going into court, that, in addition thereto, there would be between $700 and $800 court costs, which would be taxed to this plaintiff. Hoskins assured appellant that he, Hoskins, was an attorney, learned in the law, and that matters he had represented to him were true, and that the affairs would result as he outlined to him; that it would be a great saving to plaintiff to make this character of settlement.

The appellant states that he had no knowledge of the law, and never had a lawsuit before, and was totally

ignorant of the law; that he did not know his rights in the matter except as outlined by defendant Hoskins, and that, believing Hoskins' statements and relying solely upon them, he had finally consented to a division of the property. He alleged that he has learned, or is advised and believes, and, so believing, alleges, that the statements of Hoskins as to the matters of fact therein contained are true and the matters of law as represented by the defendant Hoskins were false and fraudulent, and made for the purpose of deceiving and misleading this plaintiff, knowing that he was ignorant of the law and his rights in this particular case, and knowing that he was relying upon his statements.

The appellant stated that the defendant Gladys H. Adkins was not entitled to recover $1,400; that she is not entitled to recover $2,366; and that she is not entitled to recover one-half of his property, real and personal, and that the court cost in all probability never would exceed $150. Appellant alleged that all of said statements were false and fraudulent, and made for the purpose of deceiving and misleading this plaintiff into a division of his property. Hoskins told him that, in order to divide his property, they must deed it to some third person, and it was customary to use some single person, and for that person to deed back to them severally their portions, and that this would clear the title to the property that they held, and that they could sell and dispose of the property as they saw fit. The appellant alleged that these representations were false and fraudulent, and that the statements were made for the purpose of deceiving, and did deceive, this plaintiff, and that he did execute deeds to all of the property to the defendant G. O. Patterson, Jr., and that said G. O. Patterson, Jr., then deeded back to this plaintiff a forty-acre tract of land, and deeded to defendant Gladys H. Adkins the balance of the property, including their home. Appellant alleged that on the same date Gladys H. Adkins made and executed to the said J. D. Hoskins a mortgage on the property deeded to her

in the sum of $2,019.25, and that said mortgage was recorded in Johnson County, Arkansas.

Appellant stated that Gladys H. Adkins was not entitled to recover the amount of her earnings since their marriage; that she is not entitled to recover the $1,400; that no separate accounts have ever been kept between them; that their affairs have all been as one up to the time of the separation; and that she is not entitled to recover from this plaintiff any portion of his property, for the reason that she is not entitled to a divorce.

Appellant stated that the statements of Hoskins were false and fraudulently made to deceive him, and did deceive him, and that the deed to Patterson was executed without consideration; that he would not have consented to a division of his property but for the fraudulent statements of the defendant J. D. Hoskins.

Gladys H. Adkins filed answer, admitting that she and appellant were lawfully married; denied all of the other material allegations in the complaint. She alleged that, during their married life, she delivered and supplied to the plaintiff the sum of $3,800, which was used by the plaintiff in the acquisition of the property involved in this suit; said money was advanced by her with the understanding that she was to have an interest therein equal to the amount furnished by her. She alleged that Hoskins did not deceive or attempt to deceive with reference to the legal rights of the defendant and his property and affairs.

J. D. Hoskins filed separate answer, denying all the material allegations of the complaint.

George O. Patterson filed answer denying all knowledge of transactions, and alleging that said deeds were executed to him as a matter of transferring the property, as he thought, at the request of both of them.

Defendant filed a demurrer, but it was never passed on.

Gladys H. Adkins filed a suit for divorce. Adkins filed answer, and then an amendment, in which he asked for a divorce on his cross-complaint.

The two suits were consolidated and tried together in the chancery court. The court granted a decree for divorce to D. L. Adkins, dismissed the complaint of Gladys H. Adkins for divorce, and dismissed the complaint of D. L. Adkins against Gladys H. Adkins and others for cancellation of deeds for want of equity, and D. L. Adkins has appealed to this court.

Appellant's contention is that he was induced to make the settlement with his wife and convey his property on false and fraudulent representations as to the law. He does not claim there was any false representations as to any fact.

Attention is called by appellant to the statement in R. C. L. where it stated, in substance, that if a party, acting in ignorance of a plain and settled principle of law, is induced to give up property, a court of equity will relieve him, especially if he had been led into his mistake of the law by the other party. The section referred to by appellant in R. C. L. contains the following statement:

"It has already been pointed out that, in general, where the parties understand the facts, an erroneous deduction of law is not cause for annulling a compromise, but, while relief will rarely if ever be granted merely on account of mistake of law, there are cases where there are other elements not in themselves sufficient to authorize the court to interpose, but which, combined with such a mistake, will entitle the party to relief." 5 R. C. L. 898.

It is not urged in this case that any other elements entered into the agreement or brought about the agreement or compromise; but appellant's claim of a right to rescind is based solely on false and fraudulent representations as to the law. Indeed, the appellant himself knew as much about all of the facts as anybody could know, but it is his contention that Mr. Hoskins came to him, representing that he was a lawyer and was learned in the law, and that, under the law, his wife would recover one-half of his property in addition to recovering costs, which he states was represented by Hoskins to be $700 or $800.

Hoskins went to appellant's place about 10:30 in the morning, and he and appellant talked for about an hour, when Hoskins left, and told appellant he would be back at one o'clock.

There is no dispute about these facts, but there is considerable dispute about what was said between appellant and Hoskins during their conversations. Nobody was present but Hoskins and appellant, and the appellant testifies that he lives at Clarksville, was born and raised in that county, and is 53 years of age, and a schoolteacher. His wife was also a teacher. About ten o'clock Mr. J. D. Hoskins came to appellant's home, representing himself as being an attorney for Mrs. Adkins. Up to this time appellant had had no notice from any one that his wife contemplated bringing a suit for divorce. He was running his canning plant. Hoskins said he wanted to have a talk with appellant. Witness said: "We went to the house, and Hoskins said he was up there, that my wife had decided to leave me and not live with me longer, and that she had employed him to sue for divorce, and his business there was to talk about a property settlement." Witness told him he was surprised at the turn of affairs; that his wife was in Texas, visiting her sick mother. Witness said Hoskins told him that Mrs. Adkins was in town, and witness kept insisting on seeing his wife, and Hoskins kept talking about property. Hoskins finally said that he thought that whatever he said she would be willing to do, and that he would come back at one o'clock. Witness asked Hoskins the terms of settlement, and Hoskins told him. One item was $1,400 that Mrs. Adkins received from selling some property in New Mexico, and Hoskins demanded in settlement $3,700. Adkins said that his entire property was worth not more than $4,000. Hoskins promised to bring appellant's wife up to the house, but she did not come. Hoskins came back at one o'clock. He said he was an attorney at law, that he had been practicing law some ten or twelve years, and that he knew the law in the matter thoroughly, and, unless wit-

ness made settlement, he would bring suit at once, and that there was no doubt but what the court would allow the claim and, in addition thereto, $700 or $800 court costs. Hoskins told witness what the grounds for divorce were, and that he had the complaint drafted; had a copy of the complaint. He stated that he had the complaint prepared to file in case a settlement was not made. The charges in the complaint were the same as were later filed. He said in addition he had charges that he was prepared to make and prepared to prove in case appellant did not make settlement, and said that he would file the complaint that he had if they settled, and if they did not, he would file another complaint with additional charges. He represented that his statement about the property was the law, and that Mrs. Adkins could absolutely recover. He referred both to his personal and professional experience. Witness then said that he made the settlements on the basis of deeding away his entire property to a third person, and that was suggested by Hoskins, and then there was deeded back to him 40 acres of land and to Mrs. Adkins the rest of the land. He testified that the 40 acres of land was worth $2,500.

Hoskins testified that he was an attorney at law, and formerly lived at Paragould, Arkansas, but now lived in Little Rock; that Mrs. Adkins had employed him to bring suit for divorce, and by correspondence they agreed to meet in Clarksville. That he got to Clarksville one night, and next morning, about 10:30 or 11, saw Adkins; told Mr. Adkins his business; that his wife had employed him to represent her in recovering property and to bring suit for divorce. That the thing Mrs. Adkins was interested in was the recovery of $3,766 that she put in the property. He testified that Adkins said he realized she put the money into the property, admitted that he owed her that much money. Hoskins suggested that Adkins get him an attorney; that he could talk to his lawyer better than he could to him; told him that he was not representing him, but representing his wife, and told him what, in his judgment, the wife was entitled to. That

he went to the hotel, after they had talked a while, and went back at one o'clock. Witness put the figures down, at the suggestion of Adkins; $4,000 for the home place, $2,500 for the 40 acres, and some other property, which witness said totaled $8,650. Adkins admitted that he owed $3,766. Hoskins told Adkins that, after the settlement was agreed on, he would go down to Mr. Patterson's office and get deeds and papers drawn up, and Adkins said his deeds were at the Bank of Clarksville, and he would meet Adkins at the bank. They did meet at the bank, and went to Patterson's office. The only connection that George O. Patterson, Jr., had with the transaction was that they were merely using him in transferring the property. Hoskins swore that he told Adkins he was an attorney at law, but did not tell him he was learned in the law; never told him anything except that he was an attorney. He did not represent to Adkins to make the settlement.

There was a good deal of testimony both by Adkins and Hoskins about the wife, but that is immaterial on this question. They were the only witnesses as to the conversation that led up to the compromise, and their testimony is conflicting. The appellant admits that his wife sold some property and that he took the $1,400 and put it in the bank in his own name; told her about it; that it was an error to deposit it in his name. He also admits that she sent him $500 at one time. It appears that he was a man of intelligence and education, and had been teaching school for a number of years. He concluded to quit teaching, and the arrangement was that he should work about the home and the canning factory until he got where that would be a paying business, and that his wife would teach school, and she did teach for several years. It appears from the testimony that a good deal of the property was accumulated by the efforts of both of them. Both of them worked, and what they made went into a common fund, according to the testimony of appellant. When it is conceded that she put $1,400 in at one time, $500 at another, and then that both

of them contributed to make the living and accumulate a portion of the property, this shows that she was entitled to a considerable sum as her own property; not as much, perhaps, as she got, but quite a considerable sum.

While the appellant states that he was stunned or dazed by the information that his wife had decided not to live with him any more, yet, as we have said, he was a man of intelligence and education, was in the town where he had lived a long while, had many friends, knew all the lawyers in town, and, of course, knew all the facts. He knew how much his wife had contributed, how much money he had received from her; he knew the value of his property, and his wife's attorney left him in the forenoon to come back at one o'clock, and, on Hoskins' return at one o'clock, the settlement was made. There does not appear to have been any representations made, even according to Adkins' testimony, except what he says that Hoskins told him a court would do with reference to the property. And, after having this interval between the time Hoskins left in the morning and when he came back in the afternoon, it does not appear that he consulted anybody, but made the deed to the property, and a deed to 40 acres was made back to him. He now asks that these instruments be canceled, but it has been said that the cancellation of an executed contract is an assertion of the most extraordinary power of a court of equity and that it ought not to be exercised except in a clear case upon strong and convincing proof, and a court would not be justified in canceling a contract unless the proof was clear, strong and conclusive.

In this case there is no corroboration of appellant's testimony at all. The only persons to testify about the contract and what led up to the contract are the appellant and Hoskins, and courts will not decree a cancellation of an executed contract on the uncorroborated evidence of the plaintiff, unless the evidence is clear, unequivocal and decisive. *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52; *Ammonette* v. *Black,* 73 Ark. 310, 83 S. W. 910; *McNutt* v. *McNutt,* 76 Ark. 14, 88 S. W. 589.

"As a general rule, fraud cannot be predicated upon misrepresentations as to matters of law, nor upon opinions on questions of law based on facts known to both parties alike, nor upon representations as to what the law will not permit to be done, especially when the representations are made by the avowed agent of the adverse interest. Reasons given for this rule are that every one is presumed to know the law, both civil and criminal, and is bound to take notice of it, and hence has no right to rely on such representations or opinions, and will not be permitted to say that he was misled by them. Pursuant to this it has been held that fraud cannot be predicated on misrepresentations as to the legal effect of a written instrument, as, for example, a deed, or a Federal land warrant, or a contract of insurance." 12 R. C. L. 295.

It is not contended in this case that the facts were not known to both parties alike, or rather, it is not contended that the appellant did not know all the facts. He does not claim any misrepresentations as to facts, but claims misrepresentations as to the law.

There are some exceptions to the above rule, for instance, where a relation of trust or confidence exists between the parties. Or if Hoskins had misrepresented the law, knowing that Adkins was ignorant of it, and had taken advantage of him through such ignorance, and Adkins had relied upon the superior knowledge and experience, and the other party had advised him that it was unnecessary or inadvisable to consult a lawyer. None of these things, however, existed in this case. That is, they are not shown by a preponderance of the evidence to exist. There is a conflict as to what took place, as we have said, but Hoskins swears positively that he told Adkins to get him a lawyer, and it is nowhere contended that he told him it was unnecessary or inadvisable to get a lawyer. Since the appellant knew all the facts, and knew how much money his wife had contributed, and was at his home in a town where his friends lived, where he knew all the lawyers in town and had friends

that he could have consulted, it was his duty to make some effort and exercise some diligence to inform himself.

We cannot say that the evidence in this case on the part of the appellant is clear and convincing, and the decree of the chancery court will therefore be affirmed.