UNION COMPRESS & WAREHOUSE COMPANY *v.* SHAW.

4-2823

Opinion delivered January 23, 1933.

*Gentry & Gentry*, for appellant.

*John P. Vesey*, for appellee.

KIRBY, J. This appeal comes from a judgment for damages for personal injuries to appellee, an employee of appellant company.

Appellee was injured on March 4, 1931, while working for the appellant company in its warehouse at Hope, Arkansas, by a bale of cotton falling on his foot and leg, breaking it. It was alleged the injury was caused by the negligence of a fellow employee while appellee was trucking cotton from the warehouse into a freight car to be loaded therein. It was the duty of the employee in the car to help unload the bale of cotton from the truck, steady and set it up on end in the car. When he unloaded the bale and started back with the truck, the other employee failed to steady or hold it up and negligently allowed it to fall on his leg, breaking it, before he could get in the clear with the truck.

The appellant concedes that the evidence is sufficient to justify submitting the issue to the jury, which found

a verdict for damages against the company. They relied on the release executed on the 9th day of April, 1931, by the appellee in consideration of the payment by the company of the hospital bill, the doctor's bill incurred by the appellee on account of the injury and the payment to him of the sum of $20; it being contended by appellant that the release is binding upon the appellee, and no showing was made at the trial sufficient to avoid it, and that the court should have given appellant's peremptory instruction, and that the court erred in giving plaintiff's requested instruction No. 1, and says in its brief: "On these two propositions alone we base our right to a reversal of the judgment of the trial court."

Appellee admitted that he executed the release, but said that he could neither read nor write (except he could write his name), and that the release was not read or explained to him; that he did not understand it was final anyway, and that when he got back to his home and his wife read the check and explained the effect of it, he refused to carry out the agreement and had never cashed the check. On the day the release was executed Mr. Kyler, the superintendent of the compress company, went down in his car taking the insurance adjuster with him, to the home of appellee, where he found him sitting on the edge of the bed. He was still using a crutch, and his foot was swollen and bound up. They took him out on a stretcher, put him in the car and carried him to the compress offices where in the presence of Mr. Kyler, the manager, and Mr. Franklin, the immediate superintendent of appellee in his work, the release was executed. It was not read over to appellee before he signed it, but the witnesses stated that it was explained to him. The adjuster, Mr. McIntosh, asked him how the injury occurred, and appellee explained it to him, and was advised by McIntosh, after he had made his statement, "that he did not think there was any liability on the part of the compress." McIntosh asked him how much money the compress company had paid him and how much they had expended: "that, after McIntosh advised him that he did not believe there was any liability, he told Shaw

that they wanted to do what was right and said that they would pay the doctor bill, the hospital bill and give him $15 if he would sign a release; the appellee stated that this sum looked mighty small, and finally Mr. McIntosh offered him $20 and to pay all the bills if he would agree to release the compress, and "the negro said that this sum looked mighty little but, if that was all they would pay, he guessed it would be all he would get." McIntosh then made out the release, and it was explained to appellee, and, when it was finally explained to him, McIntosh gave him his fountain pen and told him where to sign; then Mr. Franklin and Mr. McIntosh signed as witnesses to his signature, and McIntosh took Shaw home in his car. McIntosh gave him a draft for $20 after he had signed the release. Mr. Kyler stated further that the release was not read to Shaw, but was fully explained to him; that he did not know whether or not it was told him that the doctor said he would be well in 8 or 10 days, that he might have said as much, but he did not remember it. Said neither the check nor the release was read to appellee.

The instruction No. 1, objected to, reads as follows:

"If you find from a preponderance of the evidence in this case that the plaintiff was injured while in the employ of the defendant, and while in the exercise of due care for his own safety, and that said injury was the direct result of the negligence of another employee of the defendant, and if you also find from a preponderance of the evidence that the plaintiff, at the time he signed the release introduced in evidence, did not know what he was signing, then and in that event you shall find for the plaintiff." This court has concluded that the trial court erred in giving this instruction.

Appellee admitted the execution of the release, but said he could neither read nor write. Said it was not read to him or explained and the burden of proof was upon him to show, of course, that it was executed or procured in such a manner as would release him from its binding effect.

The undisputed testimony shows that neither the release nor the check was read to appellee before he signed it, and that he did not know what was written in the check until he got home and his wife read it to him, and that he then refused to cash the check and never had done so. Appellee testified that he did not know what he had signed, but he did recognize the signature on the release exhibited in evidence as having been made by him. Said the reason he signed the release was that his leg pained him so he was sick and wanted to get back home and get to bed.

It has been held that one cannot avoid the effect of a contract of release by stating that he did not read it when he signed it, or know what it contained. *Texas Co.* v. *Williams,* 178 Ark. 1110, 13 S. W. (2d) 309.

In 23 R. C. L., par. 17, page 387, it is said: ''But one who has signed a written release, without being induced thereto through any fraud or deception, cannot avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents.''

Although it is true that appellee could not read, it was shown that the effect of the release was explained to him, but, although he testified to no single act of the representatives of the company who were present when the release was procured that would avoid it, it was also shown that, upon his explanation of the occurrence causing the injury, the claim agent told him that there was no liability upon the part of the compress company for the injury, and that they would give him so much for a release under the circumstances, desiring to treat him fairly. This statement was not disagreed to by either of the representatives of the compress company, and evidently induced the appellee to execute the release which he would not otherwise have done; and under the circumstances, although he is not allowed to avoid the effect of the release on account of not having it read to him, if he was induced to sign it by the deception, whether it was intentionally fraudulent or not, practiced by the claim agent in making the statement that there was no liability on the part of the company for payment of

damages for the injury suffered by him, such would not be the case. No objection was made to this statement by his superiors—bosses—and he executed the release under these conditions and repudiated the contract immediately upon being informed by his wife of the contents of the check.

The instruction No. 1 was not an accurate statement of the law under the circumstances, and the majority has determined that it was erroneous, and that the cause must be reversed on account of its prejudicial effect. For this error the judgment is reversed, and the cause remanded for a new trial.