NATIONAL LIFE & ACCIDENT INSURANCE COMPANY v. BLANTON.

4-4381

Opinion delivered October 19, 1936.

*Barber & Henry* and *Ira J. Mack,* for appellant.
*J. F. Parish,* for appellee.

BUTLER, J. On March 21, 1934, Della Blanton signed an application for a life insurance policy upon which, March 26, a policy was issued by appellant company. She died on May 8, 1934, the premiums due on said policy having all been regularly paid. Notice of death was given by appellee, the daughter of Della Blanton and the ben-

eficiary named in the policy. On June 29, 1934, appellee was paid the sum of $3.60 by the appellant company, the amount of premiums which had been paid by the assured or her agents, and executed a written instrument which recited that the above sum was accepted in settlement of all claims under the policy which she surrendered for the following reason: "Not an insurable risk." After this appellee filed suit against the appellant to recover the face of the policy in the sum of $540 less the $3.60. She alleged that the policy was in full force at the time of the death of the assured, and, further, that appellant had denied liability on account of the policy, and, through misrepresentation, threats and fraud, obtained a release from her which she alleged was not binding upon her.

The answer denied the allegation relating to the procurement of the release which was pleaded in full satisfaction of appellee's demand and the further defense was tendered that the assured, in her application, stated that she was in sound health and not suffering from any diseases named in the policy for which no obligation was assumed by the insurer; that appellant did not require a medical examination, but relied upon the statements made by the assured in her application which she well knew at the time were false; that at the time of the said application and at the time of the delivery of the policy the assured was in unsound health and suffering from diseases of the heart, liver, kidneys and lungs and her general health was poor and had been for some years as she well knew.

On the issues joined at the trial of the case evidence was adduced which resulted in a verdict and judgment in favor of the appellee for the amount sued for. The court thereupon assessed a penalty of twelve per cent. and an attorney's fee, which, together with the amount of the verdict, aggregated the sum of $752.54. From that judgment an appeal has been duly prosecuted and the judgment is sought to be reversed for failure of the trial court to direct a verdict in behalf of appellant on its motion duly made. This motion was grounded upon the contention that the policy was void because of misrepre-

sentations by the assured regarding her health, which, it is claimed, were established by the undisputed evidence; also, upon the ground that the evidence failed to establish the invalidity of the release for the causes alleged by the appellee.

On the first contention it may be said that the question of the health of the assured was one of fact. *Old American Ins. Co.* v. *Davis,* 175 Ark. 1170, 300 S. W. 415. The evidence adduced on behalf of appellee consisted of the testimony of a number of lay witnesses who testified that they had known the assured for some considerable time before her death and, in a general way, testified that during that time she had not been well. Some testified as to conversations had with her in which she had stated around the first of March, 1934, that she had been sick with the flu a month or two previous to that time. Some testified that she seemed to have "smothering spells" and that her legs were swollen to such extent that one had big blisters raised on it which burst, causing a discharge of water. One of the witnesses, Mrs. Virgil Hutchinson, testified that early in March, 1934, witness went with the assured to Newport to see Dr. Gray and on reaching the town she had a kind of spell and fainted and had to wait an hour or two before they went to the doctor's office; that assured was in Dr. Gray's office for thirty minutes, but witness did not go in with her.

One of the witnesses testified that she visited the assured on the afternoon preceding her death that night. She sent for a doctor who gave her a "shot"; that witness had seen a number suffering with pneumonia and in her opinion the assured was not afflicted with, and did not die from, that disease.

The testimony of these witnesses is not undisputed. The beneficiary in the policy, a daughter of the assured, testified that except for bad teeth and a sinus trouble from which her mother suffered a great deal, she had not been sick enough to be in bed but two or three times during the four years preceding witness' testimony; that she was sick in the winter of 1932 and had a case of flu in the winter of 1933; that at the time she made the appli-

cation for insurance, which was at the home of a Mr. Gist and in witness' presence, she was in good health. Witness stated that the cause of her mother's death was pneumonia with which she had been ill about a week or ten days preceding her death.

A Mr. Trentham, who took the assured's application for insurance as the agent for appellant company, testified that he had known Mrs. Blanton for some time before she signed the application. He failed to make any statement in his testimony as to the assured's health at the time the application was taken.

Dr. Gray, a physician, who, as the testimony of appellant disclosed, had been visited by the assured early in March, 1934, testified that she came to his office, but that he did not recollect any particular examination he made. He stated that he must have made one, however, or he would not have written a prescription for her. Several prescriptions were introduced in evidence and the doctor stated that he could say definitely, because of the character of these prescriptions, that the assured was not suffering from any ailment of the heart. He further stated that Mrs. Blanton was a relief patient, but that he gave such patients the same kind of examination as those who were able to pay and that he would have been able to find out in thirty minutes what her trouble was. The prescriptions he had given Mrs. Blanton were for quinine and laxatives—one was a sedative, but the doctor did not recall for what it was prescribed.

The beneficiary, Imah Blanton, also testified that one of her mother's legs was swollen as a result of an injury she received in a fall.

The doctor who attended Mrs. Blanton on the afternoon of the last day of her life was not called as a witness and did not testify. The failure to procure this testimony leaves the exact cause of the insured's death uncertain.

The provision of the policy relied on by the appellant is to the effect that no obligation is assumed by the company if the assured should not be in sound health on the date of the policy, or if, before that date, she "has

had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, * * *.'' It is insisted by the appellant that the finding of the jury necessarily implied by its verdict is so clearly and palpably against the weight of the evidence as to shock the sense of justice of a reasonable person and appellant invokes the doctrine announced in *Singer Manufacturing Company* v. *Rogers,* 70 Ark. 385, 68 S. W. 153, where the court said: ''The rule established in this court is that, even where there may be some conflict in the evidence, a new trial will be granted where the verdict is so clearly and palpably against the weight of evidence as to shock the sense of justice of a reasonable person.'' This case followed and approved the rule announced in *Oliver* v. *State,* 34 Ark. 632, quoting therefrom as follows: ''But in all cases, even those of conflict, this court will direct a new trial, when, upon inspection of the evidence, the verdict is so clearly and palpably against the weight of the evidence as to shock a sense of justice. The line lies between a mere preponderance within the bounds of a fair difference of opinion and that gross preponderance which indicates an unreasoning passion or prejudice on the part of the jury, or misapprehension of the law, or disregard of the legitimate sphere of their action.''

In the case of *Chalfant* v. *Haralson,* 176 Ark. 375, 3 S. W. (2d) 38, reference was made to the cases *supra,* and in that connection the court said: ''In so far that it might be said that these cases sustain a holding that this court will set aside a verdict of the jury where there is any substantial evidence to sustain it, they are against the current of decisions in this state and contrary to the long settled rule of this court on the subject.'' The jury is the sole judge of the credibility of the witnesses and necessarily has to pass upon the truthfulness of the testimony in determining the weight to be given it. The jury accepted the testimony adduced on behalf of the appellee as establishing the true facts in the case and we are unable to say that this testimony was palpably false to that degree which would warrant our invasion of the province of the jury. Accepting this testimony as true and giving

to it its greatest probative value, we think it of a substantial nature. If Mrs. Blanton had been in such condition as testified to by appellant's witnesses, certainly Dr. Gray would have observed it for he had ample opportunity to do so, since, according to the testimony of a witness for the appellant, she was in his office for thirty minutes. This reasonably implies that the doctor made an examination of Mrs. Blanton and, while he was unable to recall what the examination was, he was prepared to, and did, say that the prescriptions he gave her failed to indicate any serious complaint. If her condition was, indeed, that described by appellant's witnesses, it would have been discernible from a casual observation. Mr. Trentham must not have observed any indication of disease, else he would have been called upon to relate the result of his observation. This circumstance, together with the failure to call as a witness the physician who last administered to the assured, corroborates the testimony of the appellee and gives to her evidence substantial weight. This view renders it unnecessary to notice the contention of the appellee that even though the representations made in the application may have been false these were not sufficient to avoid the policy, there being no evidence that they were knowingly and wilfully made by the assured with the intent of deceiving the insurer.

On the question of the method of procuring the release the testimony is in irreconcilable conflict. The appellee testified that the proof of death and claim for the policy benefit was delivered to her by Mr. Trentham, the company's agent; that she gave him the insurance policy and receipt book on his representation that it would be necessary to send them in to the home office in order for her to receive payment of the sum for which her mother was insured; that she heard nothing about the claim until about the 28th or 29th of June when several men, representing themselves to be the agents of the appellant, visited her and stated it had been discovered that her mother had defrauded the appellant into issuing the policy and if she tried to get the insurance she would be sent to the penitentiary; that these men then offered to return

the premiums upon her signing a receipt and accepting the same in full settlement of her claim under the policy; that she did not sign the receipt and accept the money on that afternoon, but saw Mr. Trentham the next day and, after talking with him, signed the receipt. He advised her that she might be in "a tough spot" and about the best thing he could advise her to do would be to accept the amount offered. It was then that she signed the receipt and release.

In the statement regarding the manner in which the receipt and release were obtained, appellee was corroborated by the testimony of a witness who overheard the conversation between her and appellant's agents. This testimony was denied by the agents who testified in the case, but as the jury accepted the testimony of the appellee as true, so must we. This establishes such duress as to render the contract of release unenforceable.

It is a fundamental principle that contracts, to be valid, must be voluntarily made, and, where executed under such circumstances as would enslave the will, the contract is void. This court, in the early case of *Burr* v. *Burton,* 18 Ark. 214, declared the rule that "A contract made by a party, under compulsion, is void; because consent is of the essence of a contract, and where there is compulsion, there is no consent, for this must be voluntary. Such a contract is void for another reason. It is founded in wrong or fraud. It is not, however, all compulsion which has this effect; it must amount to duress. But this duress may be either actual violence, or threat. * * * Duress, by threats, * * * exists not wherever a party has entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong, as of death, or great bodily injury, or unlawful imprisonment."

In *Fonville* v. *Wichita State Bank & Trust Co.,* 161 Ark. 93, 255 S. W. 561, 33 A. L. R. 125, we said, in effect, that to constitute duress sufficient to render void a contract because of threats it is necessary that the threats and circumstances be of a character sufficient to excite the reasonable fears of a person of ordinary courage. This,

of course, does not mean an ideal person, but one similar to the person affected and surrounded by similar circumstances. Manifestly, the threats which would induce the greatest fear in one person and constrain his acts might have no influence on another and a person of "ordinary courage" is one similar to the person against whom the threats are made as to age, sex, mentality and information surrounded by the same, or similar, conditions. 13 C. J., § 315, p. 400; § 319, p. 402.

It is clearly inferable from the evidence that the appellee is a woman of limited information unaccustomed to business transactions. The threats made by the agents of appellant company would have had no influence on many persons, but to us, they appear to have been sufficient to submit to the jury whether sufficient to overcome the appellee's mind and to prevent her from exercising her own free will and to cause her to execute the release.

It follows from the views expressed that the judgment of the lower court is correct and should be affirmed. It is so ordered.