Faye Hendrix VICKERS, Individually and as Administratrix of the Estate of Arthur Ray Hendrix, Deceased, Appellee,

v.

GIFFORD–HILL & COMPANY, INC., Appellant.

No. 75–1377.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1976.

Decided May 4, 1976.

Rehearing Denied June 7, 1976.

ny, Inc. Subsequently, an action was commenced by Faye Hendrix Vickers, individually and as administratrix of the decedent's estate, pursuant to the Arkansas Wrongful Death Statute. Ark.Stat.Ann. 27–906—27–910 (Repl.1962). A jury returned a favorable verdict and fixed damages at $85,000, apportioned as follows: C. V. Hendrix, father, $32,000; Wilma Faye Hendrix, mother, $32,000; Sue Hendrix, sister, $5,000; Faye Hendrix Vickers, sister, $5,000; and Johnny Hendrix, brother, $10,000. Gifford-Hill appeals.

I.

Six days after the fatal accident, the appellant and the decedent's father and mother entered into an agreement purporting to release the appellant from all liability. The parents received as consideration $1,721.56, the cost of the funeral. Gifford-Hill contends that the claims of the parents are barred, as a matter of law, by the release. Specifically, it argues that: (1) the admitted failure of the parents to tender or return the consideration is nonperformance of a necessary condition precedent to the recission of the release; (2) the court erroneously instructed the jury on the burden of proof necessary to vitiate the release because of fraud or misrepresentation; and (3) the evidence was insufficient to permit the jury to find that the release was procured by fraud or misrepresentation.

A.

Whether tender or return of the consideration is a necessary condition precedent to the recission of a release must be determined, in this diversity suit, by the application of Arkansas law.

Both parties agree that tender or return of the consideration is unnecessary when a release is procured by fraud in the execution, i. e., when the releasor was incapable of making a contract or was ignorant of the contents and character of the instrument signed. The parties also agree that this release was not so procured. The dispute between the parties is whether tender or return of the consideration is necessary to

Victor Hlavinka, Texarkana, Tex., for appellant; David E. Hightower, Texarkana, Tex., on brief.

Gene Harrelson, Texarkana, Ark., for appellee.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Arthur Ray Hendrix, age seventeen, was fatally injured when the motorcycle he was riding struck a cable-gate stretched across the private road of Gifford-Hill & Compa-

the maintenance of an action at law when a release is procured by fraud in the inducement, i. e., when the releasor understood the nature and effect of the release and knew the contents of the instrument signed but was the victim of fraud or false representations. Each cites to decisions of the Arkansas Supreme Court to support its position.

The conflict in the decisional law of Arkansas is readily apparent upon the comparison of *Pekin Cooperage Co. v. Gibbs*,[1] 114 Ark. 559, 170 S.W. 574 (1914), with *St. Louis-San Francisco Ry. Co. v. Cox*,[2] 171 Ark. 103, 283 S.W. 31 (1926). The former is in accord with the contention of the appellant, and the latter supports the contention of the appellee. The latest Arkansas Supreme Court decision on the issue, *Coddington v. Safeguard Ins. Co. of N. Y.*, 237 Ark. 457, 373 S.W.2d 413 (1963), follows the *Pekin* rule: tender or return of the consideration is a necessary condition precedent to the recission of a release and the maintenance of an action at law.

■ *Pekin*, however, recognized in *dicta* an exception to the rule. A release procured by fraud will be set aside, without tender or return of the consideration, when the releasor, because of conditions of poverty, is unable to meet the tender-or-return requirement and the fraud remained undiscovered until after the consideration had been expended or otherwise put beyond the releasor's control. *Pekin Cooperage Co. v.*

*Gibbs, supra* at 577. The conditions to bring the exception into play are present here.

■ The after-tax income earned by the decedent's father was seventy-five to eighty dollars per week. Clearly, he was unable, after the consideration was expended in payment of the funeral expenses, to satisfy the tender-or-return requirement. Just as clearly, the fraud, as found by the jury remained undiscovered. The appellant's check, endorsed by the parents, was immediately given to the funeral home by Gifford-Hill.

The question remains whether the Supreme Court of Arkansas would follow the *dicta* of *Pekin* and adopt the exception if it was presented with an appropriate factual situation. We believe it would. The exception is recognized by other jurisdictions,[3] it was recognized by the District Court,[4] its adoption would tend to harmonize apparently conflicting Arkansas decisions and its application brings about a just result.

### B.

■ The District Court charged the jury that the release was invalid if the proof established by a preponderance of the evidence that it was procured by fraud or misrepresentation. The burden of proof was placed upon the appellee. Gifford-Hill contends, however, that Arkansas law imposes a greater burden: the proof of fraud or misrepresentation must be established by

1. Cases following the *Pekin* decision are: *St. Louis, I. M. & S. Ry. Co. v. Smith*, 82 Ark. 105, 100 S.W. 884 (1907); *St. Louis, I. M. & S. Ry. Co. v. Brown*, 73 Ark. 42, 83 S.W. 332 (1904); *Harkey v. Mechanics' & Traders' Ins. Co.*, 62 Ark. 274, 35 S.W. 230 (1896); *St. Paul Fire and Marine Insurance Company v. Hundley*, 354 F.Supp. 655 (E.D.Ark.1973).

2. Cases following the *Cox* decision are: *Perkins Oil Co. of Delaware v. Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938); *Robinson v. Missouri Pacific Transp. Co.*, 192 Ark. 593, 93 S.W.2d 311 (1936); *Union Sawmill v. Langley*, 188 Ark. 316, 66 S.W.2d 300 (1933); *Missouri Pac. R. Co. v. Elvins*, 176 Ark. 737, 4 S.W.2d 528 (1928); *St. Louis, I. M. & S. Ry. Co. v. Hambright*, 87 Ark. 614, 113 S.W. 803 (1908); *Industrial Mut. Indemnity Co. v. Thompson*, 83 Ark. 575, 104 S.W. 200 (1907).

3. *See New Amsterdam Casualty Co. v. Harrington*, 11 S.W.2d 533 (Tex.Civ.App.1929); *Indianapolis Abattoir Co. v. Bailey*, 54 Ind.App. 370, 102 N.E. 970 (1913); *Rase v. Minneapolis, St. P. & S. Ste. M. R. Co.*, 118 Minn. 437, 137 N.W. 176 (1912); Annot., 134 A.L.R. 6, 81, 102 (1941); 15A C.J.S. *Compromise & Settlement* § 41b (1967). Indeed, counsel for Gifford-Hill argued in his motion for a directed verdict that the facts did not prove the exception of inability to tender or return the consideration.

4. We accord great weight to the District Court's determination of local law. *See Carson v. National Bank of Commerce Trust & Savings*, 501 F.2d 1082, 1083 (8th Cir. 1974) (per curiam); *Drotzmanns, Incorporated v. McGraw-Hill, Incorporated*, 500 F.2d 830, 836 (8th Cir. 1974).

clear, unequivocal and convincing evidence. Accordingly, it asserts that the instruction was error.

The appellant's objections to the instruction did not challenge the court's charge on the required burden of proof. The error, if any, was not preserved for appeal. *Griggs v. Firestone Tire and Rubber Company*, 513 F.2d 851, 857 (8th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Otten v. Stonewall Insurance Company*, 511 F.2d 143, 146 (8th Cir. 1975); Federal Rule of Civil Procedure 51.

### C.

■ Gifford-Hill's contention that the evidence was insufficient to support the jury's finding that the release was invalid because it was procured by fraud or misrepresentation is two-pronged. First, it argues that the evidence showed, as a matter of law, that the parents were not induced to sign the release because of the appellant's representations. Second, it argues that the representations of the appellant were merely expressions of opinion which cannot, as a matter of law, support a finding of fraud.

We look to federal law to determine whether the issue of inducement or reliance by the parents should have been submitted to the jury.[5] As stated in *Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir. 1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971):

> [A] motion for directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions. A directed verdict is in order only

where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the non-moving party. * * * In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. (Emphasis original) (Citations omitted.)

The testimony at trial established that Gifford-Hill told the decedent's parents that it was not liable to them for the death of their son, that their son was a trespasser upon its property, that, indeed, they could be fined for the trespass and that they should not seek the advice of an attorney. Other testimony tended to show that the parents did not believe that they or their son were trespassers and that they signed the release to be rid of Gifford-Hill and to mourn in peace. The record further showed that the father was formally educated through the ninth grade and the mother through the eighth grade. Neither had prior experience in legal matters.[6]

On this state of the record, the jury could have decided the reliance issue for or against the appellant. The issue was submitted to the jury under proper instructions and its determination is final.[7]

■ Yet, even if there was reliance by the parents, Gifford-Hill contends that it was unjustified as a matter of law because the representations were expressions of opinion and not of fact. The general rule taken from *Ryan v. Batchelor*, 95 Ark. 375, 129 S.W. 787 (1910), was stated by the Dis-

---

5. The Arkansas Supreme Court would apply the same standard. *See Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W.2d 192 (1973).

6. Releases have been found to be invalid under similar facts by the Arkansas Supreme Court. *See Mutual Benefit Health & Accident Ass'n v. Arrington*, 200 Ark. 701, 140 S.W.2d 427 (1940); *Perkins Oil Co. of Delaware v. Fitzgerald, supra; National Life & Accident Ins. Co. v. Blanton*, 192 Ark. 1165, 97 S.W.2d 77 (1936); *Union Compress & Warehouse Co. v. Shaw*, 187 Ark. 249, 59 S.W.2d 1021 (1933); *Harper v. Bankers' Reserve Life Co.*, 185 Ark. 1082, 51

S.W.2d 526 (1932); *Industrial Mut. Indemnity Co. v. Thompson, supra; St. Louis, I. M. & S. Ry. Co. v. Brown, supra.*

7. We also reject Gifford-Hill's alternative contention that the District Court should have granted its motion for a new trial. The jury's verdict was not against the great weight of the evidence. *See Reed Brothers, Inc. v. Monsanto Company*, 525 F.2d 486, 500 (8th Cir. 1975); *Fireman's Fund Insurance Co. v. AALCO Wrecking Co., Inc.*, 466 F.2d 179, 187 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

trict Court in *St. Paul Fire and Marine Insurance Company v. Hundley,* 354 F.Supp. 655, 661 (E.D.Ark.1973):

"Now, before a representation will be considered fraudulent in law so as to give a right of action therefor, it must be made relative to a matter susceptible of accurate knowledge, and must be a statement imparting knowledge on the part of the person making the representation; and it must also be relied on as such. If the statement was made only as an expression of opinion, or if it was not made in a manner so as to induce the other to act in reliance thereon, then such representation, even though not true, would not be sufficient to base an action thereon for deceit."

But, a statement concerning a matter not susceptible of accurate knowledge, *i. e.,* an expression of opinion, which is false and is known to be false when made is also actionable. The general rule does not apply in the absence of good faith. *Anthony v. First National Bank of Magnolia,* 244 Ark. 1015, 431 S.W.2d 267, 274 (1968).

■ The District Court instructed the jury that it must find that the fraudulent statements or false representations of the appellant were intentionally made before it could hold the release invalid.[8] The jury's holding thus necessarily included the finding that Gifford-Hill had acted in bad faith.[9] The appellant's argument premised upon the distinction between statements of fact and statements of opinion is rendered meritless.

■ Moreover, we do not agree that the appellant's statements to the parents were expressions of opinion under the law of Arkansas. Gifford-Hill's denial of liability was complete: under no interpretation of the facts surrounding the fatal accident could the appellant be held responsible in damages under Arkansas law.[10] This false statement concerned a matter susceptible of accurate knowledge. The accuracy of the statement was not dependent upon the occurrence of a future event or upon the ascertainment of unknown facts. The truth or falsity of the statement could be determined without qualification at the time it was made. Accordingly, the parents' reliance upon the misrepresentation was justified.

■ But there is authority in the decisions of the Arkansas Supreme Court for the proposition that a statement of law, although susceptible of accurate knowledge, cannot be the basis for a finding of fraud because "every one is presumed to know the law * * * and is bound to take notice of it, and hence has no right to rely on such representations[.]" *Adkins v. Hoskins,* 176 Ark. 565, 3 S.W.2d 322, 326 (1928). *See also McDonald v. Smith,* 95 Ark. 523, 130 S.W. 515 (1910); *Cornish v. Johns,* 74 Ark. 231, 85 S.W. 764 (1905). *But see Union Compress & Warehouse Co. v. Shaw,* 187 Ark. 249, 59 S.W.2d 1021 (1933).

The facts presented here, however, fall within an exception. The rule does not apply

if [the releasee] had misrepresented the law, knowing that [the releasor] was ignorant of it, and had taken advantage of him through such ignorance, and [the releasor] had relied upon the superior knowledge and experience, and the other

8. The appellee objected to the instruction on the ground that intent was not a necessary element of proof under Arkansas law. She is correct when the false statements concern matters susceptible of accurate knowledge. *Miskimins v. City National Bank of Fort Smith,* 248 Ark. 1194, 456 S.W.2d 673, 678–679 (1970).

9. The jury's finding is supported by the fact that the appellant advised the parents against seeking independent advice from an attorney, and by the fact that the appellant impliedly threatened the parents with prosecution for trespassing if the matter was not settled by execution of the release.

10. Whether a representation of law is a statement of fact or a statement of opinion turns upon the manner in which the statement is phrased. The issue is not one which can be determined without a careful review of the testimony. The record contains only the testimony of the deceased's parents. Gifford-Hill did not present for the jury's consideration the testimony of its representative who negotiated the release.

party had advised him that it was unnecessary or inadvisable to consult a lawyer. *Adkins v. Hoskins, supra* at 326.

The jury's determination that the release was not a bar to the appellee's cause is proper under the law and the facts.

## II.

■ Gifford-Hill also contends that the District Court erred in instructing the jury that it could reach a verdict for the appellee on the theory that the decedent was an implied invitee to whom the appellant owed the duty of reasonable care. It argues that the evidence presented at trial warranted submission of the cause to the jury only on the theory that the decedent was a trespasser or licensee to whom the appellant owed the duty of not causing injury by wilful or wanton conduct.[11]

There is no dispute that the duty of care which an owner or occupant of land in Arkansas owes to those who come upon its property is dependent upon whether that person is a trespasser, licensee or invitee. There is also no dispute that the decedent was not upon Gifford-Hill's property for a purpose common to both parties so as to classify him as a traditional invitee. The question presented is whether the instant cause falls within one of the exceptions recognized by Arkansas so as to classify the decedent as an implied invitee.

■ The mere acquiescence by a landowner in the public use of its private land does not amount to an implied invitation of use that gives rise to the correlative duty to exercise reasonable care. *Chicago, R. I. & P. Ry. Co. v. Harrison,* 204 Ark. 361, 162 S.W.2d 62, 63 (1942); *Arkansas Short Line v. Bellars,* 176 Ark. 53, 2 S.W.2d 683, 686 (1928); *Chicago, R. I. & P. Ry. Co. v. Payne,* 103 Ark. 226, 146 S.W. 487, 488 (1912). But the landowner who does more and induces the public use of its property will be liable

for the failure to exercise reasonable care. The applicable law was restated in *Missouri Pac. R. Co. v. English,* 187 Ark. 557, 61 S.W.2d 445, 446 (1933):

> "That the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

> "While an invitation to go upon premises will not be implied, ordinarily, from the fact that the owner or occupant has acquiesced in or tolerated trespasses thereon many decisions have recognized an exception in case of a way across lands or structures thereon. If the owner or occupant has permitted persons generally to use or establish a way under such circumstances as to induce a belief that it is public in character, he owes to persons availing themselves thereof the duty due to those who come upon premises by invitation."

> "[W]hen the owner, by his conduct, has induced a party to use a private way in the belief that it is open for the use of the public, the duty is imposed upon him of maintaining the way in a reasonably safe condition."

*See also St. Louis, I. M. & S. Ry. Co. v. Dooley,* 77 Ark. 561, 92 S.W. 789, 791 (1906). The line between acquiescence and inducement is very fine. *See Chicago, R. I. & P. Ry. Co. v. Harrison, supra* at 63.

■ The evidence was conflicting. But the testimony presented below was sufficient to warrant the jury's conclusion that Gifford-Hill had induced the decedent to believe that its private road was public in

11. The appellant's conduct could be characterized as wilful or wanton. The cable-gate was stretched across the private road about eight-tenths of a mile from the road's entrance. The road was known to be used by the public. Yet the gate, which was rust colored, was not readily visible and no warning signs, other than a faded pink-colored rag used as a marker, were provided. Such conduct evinces an utter indifference to or conscious disregard for the safety of others. *See* Annot., 44 A.L.R.3d 355, 407–409 (1972).

character and open to the public's use. The road connected Arkansas State Highway 236 with a county road and was commonly used by the public as a shortcut between the two. Indeed, the public had regularly used the Gifford-Hill road since 1955. Moreover, it was common for the public to use the appellant's land for fishing, hunting, camping, motorcycling and horseback riding. The public's enjoyment of this private land was restricted only when it directly interfered with the business operations of Gifford-Hill or when the road was closed by gates. The fatal accident, however, occurred at approximately 6:25 P.M., after the conclusion of the working day, and shortly after the decedent had checked the cable-gate and found it to be open. The gate at the entrance to the private road was open both before and after the accident. Thus, from the circumstances, the decedent could have been induced to believe that his use of the appellant's road that evening was permitted and that his travel thereon was by implied invitation. It was not error to instruct the jury that Gifford-Hill could be liable in damages for a failure to exercise reasonable care.

### III.

Finally, Gifford-Hill challenges the damage awards received by the appellee. It makes three arguments which we consider seriatim.

### A.

First, the appellant contends that the damages received by the parents are not supported by the evidence and are excessive. Each parent was awarded $32,500. Specifically, it argues that under the evidence presented, the jury should not have been permitted to return an award for the lost pecuniary benefits which the parents would have received after the decedent obtained the age of majority. We disagree.

The evidence shows that the decedent, prior to his death, had joined the Marine Corps. Had he lived, he would have entered into active duty and, in accordance with his intentions, secured an allotment for his father and mother. The decedent desired to follow the example set by his older brother while the latter was in the armed services and to continue the practice of all the children of assisting in the financial support of the parents. The jury could properly find that the decedent intended to support his parents after his minority. *See Missouri Pac. Transp. Co. v. Parker*, 200 Ark. 620, 140 S.W.2d 997, 1000 (1940).

Nor do we agree that the damage awards must be vacated because they were excessive. They were neither "monstrous" nor "plainly unjust." *See Scoville v. Missouri Pacific Railroad Company*, 458 F.2d 639, 647–648 (8th Cir. 1972).

### B.

Second, Gifford-Hill contends that there is no basis in fact to support the damage awards to the decedent's siblings for mental anguish. The sisters were each awarded $5,000, and the brother, Johnny, was awarded $10,000. It also contends that these awards are excessive.

The jury was properly instructed that under the Arkansas law of wrongful death, a beneficiary cannot recover for the normal grief occasioned by the loss of a loved one. Rather, there must be more than normal grief. *Missouri Pacific Railroad Company v. Ward*, 252 Ark. 74, 477 S.W.2d 835, 838 (1972). We assume that the jury followed the court's charge.

The trial occurred approximately twenty-two months after the fatal accident. Yet, each sibling's testimony was that they thought about their deceased brother all the time. The family had previously lost the oldest son in Vietnam, and the violent death of the youngest son brought a close family even closer together. The jury is the tribunal best suited to measure the emotional impact upon the family occasioned by the fatal accident. The evidence presented was sufficient to warrant the jury's conclusion that the grief suffered was more than the transient or passing sorrow normally felt when a loved one dies. *See Scoville v. Missouri Pacific Railroad Company, supra* at 649; *Connell v. Steel Haulers, Inc.*, 455

F.2d 688, 691 (8th Cir. 1972). Nor can we say that the awards were excessive.

### C.

Finally, the appellant contends that the District Court erred by instructing the jury that the brother, Johnny, could be awarded damages for lost pecuniary benefits that would have been received from the decedent. We agree.

▉ The statutory [12] and decisional law of Arkansas limits the class of beneficiaries who can recover compensatory damages for pecuniary loss to the surviving spouse and next of kin. *Moon Distributors, Inc. v. White,* 245 Ark. 627, 434 S.W.2d 56 (1968); *Fountain v. Chicago, R. I. & P. Ry.,* 243 Ark. 947, 422 S.W.2d 878 (1968); *Peugh v. Oliger,* 233 Ark. 281, 345 S.W.2d 610, 618–620 (1961) (dissenting opinion). Johnny is, of course, not the surviving spouse, and it is not contended that he is a next of kin under the state's law of descent and distribution. The appellee, however, urges us to liberally construe the statutory law of Arkansas so as to include the brother within the meaning of "next of kin." She argues that such a construction is justified by the fact that Johnny is mentally retarded and had, prior to the fatal accident, a reasonable expectation of financial assistance from his brother.

▉ The Supreme Court of Arkansas has been inclined to accord its wrongful death statutes a novel construction to reach a desired result. In *Moon Distributors, Inc. v. White, supra,* a stepdaughter was allowed to recover pecuniary losses for the wrongful death of her stepmother, and in *Peugh v. Oliger, supra,* a foster daughter recovered pecuniary damages for the wrongful death of her foster mother. In each case, the deceased mother stood *in loco parentis* to the daughter who was considered, as would a natural daughter, as next of kin of the decedent. The step and foster daughters were thus compensated for the loss of the financial support normally expected of a parent in accordance with the state's policy embodied in its laws of descent and distribution. In the instant cause, however, that policy would not be served by granting Johnny the right to recover for pecuniary loss. Johnny can continue to expect financial support from his parents and will, upon their death, receive his proportionate share of their estate as supplemented by the contributions of the decedent recovered in the damages award of the jury. Johnny's relationship to the decedent is not analogous to that of next of kin as defined by Arkansas law. The instruction which permitted the jury to compensate him for the pecuniary loss occasioned by the death of his brother was erroneous.

The judgment of the District Court is affirmed except insofar as it awards to Johnny Hendrix monetary damages of $10,000.[13] The cause is remanded for further proceedings consistent with this opinion to redetermine the damages due the decedent's brother.

---

ROSS, Circuit Judge (concurring and dissenting).

I agree with Parts I and III of Judge Heaney's opinion but I do not agree with Part II. The road was built by the defendant, Gifford-Hill solely for its own business operations. Large gates were installed at either end of the road to exclude the public but these gates were frequently left open in order that oil drilling operations could be conducted on the property. Because of

---

12. Ark.Stat.Ann. § 27–909 (Repl.1962) states in relevant part:

The jury, or the Court in cases tried without a jury, may fix such damages as will be fair and just compensation for the pecuniary injuries * * * to the surviving spouse and next of kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only

to the surviving spouse, children, father and mother, brother, sister or persons standing in loco parentis to the deceased and persons to whom the deceased stood in loco parentis, at the time of the injury which caused the death of the deceased.

13. The damage recovery award by the jury was not apportioned to reflect that which compensated for pecuniary loss and that which compensated for mental anguish.

these operations the cable gate in question was installed. The decedent was aware of the cable, and he knew that access to this road was sometimes denied by raising the cable. It is not contended that the decedent was riding his motorcycle on the defendant's property for the defendant's benefit, or for any reason other than his own pleasure and convenience. He was on a camping trip.

Had defendant built this road as an accommodation to the public, it could be said that Gifford-Hill had impliedly invited the decedent on its property. *Missouri Pacific Railroad v. English,* 187 Ark. 557, 61 S.W.2d 445, 447 (1933); *St. Louis, Iron Mountain & Southern Railway v. Dooley,* 77 Ark. 561, 92 S.W. 789, 790 (1906). On the other hand, Arkansas law is clear that where Gifford-Hill built and maintained the road for its own business purposes, its mere acquiescence in the use thereof by others does not constitute an implied invitation. *Garrett v. Arkansas Power & Light Co.,* 218 Ark. 575, 237 S.W.2d 895, 901 (1951); *Arkansas Short Line v. Bellars,* 176 Ark. 53, 2 S.W.2d 683, 685, 687 (1928); *see Chicago, Rock Island & Pacific Railway v. Harrison,* 204 Ark. 361, 162 S.W.2d 62, 63 (1942); *Chicago, Rock Island & Pacific Railway v. Payne,* 103 Ark. 226, 146 S.W. 487, 488–489 (1912). The decedent knew of the cable gate in this case, having checked to see if it was closed within an hour of his death. The gates and cable and his admitted awareness thereof certainly negate any inference that there was an implied invitation to use the private road or that he could have logically considered that it was necessarily a safe passageway.

It was not possible that the decedent could have been misled into thinking that the private road was a public thoroughfare as in *Alcoa v. Walden,* 230 Ark. 337, 322 S.W.2d 696, 699 (1959). In *Walden* a motorist had apparently taken Alcoa's private road in the mistaken belief he was continuing on the public way. The private road led to an abandoned bauxite mine filled with water, and the motorist drove into the pit

and was drowned. The Arkansas Supreme Court noted that:

> the private road, where it leaves the public road is of the same formation, description, and width as the public road. It is significant also that the continuation of the public road from [the intersection where Alcoa's private road began] is of inferior construction and very narrow.

*Alcoa v. Walden, supra,* 322 S.W.2d at 700. Likewise, in *Missouri Pacific Railroad v. English, supra,* 61 S.W.2d at 446, the Arkansas Supreme Court noted:

> Where one by his conduct has induced the public to use a way in the belief that it is a street or public way, which all have the right to use, *and where they suppose they will be safe,* his liability should be coextensive with the inducement or implied invitation. (Emphasis supplied.)

Here it cannot be said that the decedent was misled into believing that Gifford-Hill's road was a public road or that he could reasonably assume he would be safe in using it. The road is dirt or gravel and serves as a short cut between two paved public roads. It is wider than the paved roads and branches off from them, rather than being a continuation of the public road. There are large gates at each end of the dirt road. And the decedent knew that the road was sometimes closed off by the cable gate since he had checked the cable shortly before the accident.

In my opinion this case should be reversed for a new trial with instructions to the jury on the standard of care owed to a trespasser or licensee. The deceased was not an implied invitee under Arkansas law.