## PURIFOY v. LESTER MILL COMPANY.

### Opinion delivered June 26, 1911.

1. APPEAL AND ERROR—WAIVER OF ERROR.—Error of the trial court in overruling a demurrer to the complaint will be deemed to have been abandoned where defendant did not present the point in his brief on appeal. (Page 494.)

2. RAILROADS—INJURIES TO PERSONS ON TRACK—TRESPASSERS.—Where an employee of a lumber company bought and used a railroad bicycle upon the track of an associated railroad company with the knowledge of its superintendent, he was not a trespasser. (Page 494.)

3. SAME—DAMAGE BY OPERATION OF TRAIN—PRESUMPTION.—Proof that an employee of a lumber company, which was operated in connection with a railroad owned by the same stockholders, while riding upon a railroad bicycle, was run down and killed by a train

backing toward him, makes a *prima facie* case of negligence on the part of the railroad company. (Page 494.)

4. SAME—CONTRIBUTORY NEGLIGENCE.—Plaintiff sued for the negligent killing of her intestate; there was evidence that intestate got off the defendant's train, telling the engineer that he was going to ride on his bicycle, and was riding same a short distance from the train when he was killed by the engine backing against him; it was dark and raining when this occurred. *Held* that the question whether intestate was negligent in riding so near the train was for the jury. (Page 494.)

5. TRIAL—PROVINCE OF THE JURY.—The jury are the judges of the evidence and of the reasonable inferences to be drawn therefrom. (Page 494.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; reversed.

### STATEMENT BY THE COURT.

This is an action by the widow and children of Joe F. Purifoy against the Lester Mill Company, and the Lester & Ouachita Valley Railway Company, to recover damages for his death.

The Lester Mill Company is a corporation engaged in the manufacture of lumber and owns and operates a sawmill at Lester, Ouachita County, Ark. The Lester & Ouachita Valley Railway Company is a corporation organized under the laws of the State and owns and operates a line of railway from the town of Lester in a western direction about fifteen miles. The railway company does not operate any passenger train, but carries the employees of the Mill Company over its line of road. Its principal business is to transport for the Mill Company logs from its timbered lands to its mill at Lester. The same persons are stockholders in both corporations, and the officers of the Mill Company are the corresponding officers of the railway company.

At a point some miles west of Lester the Railway Company built a spur extending from its main line about four miles. A camp was established some three hundred yards east of the intersection of this spur with the main line. An engine was operated on this spur line for the purpose of hauling timber to the main line, which was to be carried from there by other engines to the mill. Joe F. Purifoy was employed by the Mill Company as timber man, and had been employed as such for several months prior to the time he was killed on the 15th day of November, 1909. In

order to enable himself to get over the road faster, he purchased
a railroad bicycle, which he propelled up and down the road.
The superintendent of the Mill Company, who was also the super-
intendent of the Railway Company, knew that Purifoy had been
using the bicycle for about one month before he was killed. While
he did not give Purifoy permission to buy the machine, he knew
that he was using it, and, as he stated, it was agreeable to him.
He further stated that the persons running the engines on the
track of the Railway Company all knew that Purifoy was using
the machine. On the date that Purifoy was killed it had been
raining throughout the day, and Purifoy had been riding on the
engine that was operated on the spur track above referred to.
Late in the evening the engine started from the woods to the
camp at the intersection of the spur with the main track, about
four miles distant. The engine was hauling ten cars of timber.
Purifoy and most of the employees of the Mill Company were
riding on the train back to the camp. About a mile distant from
the main line at a road crossing, Purifoy got off of the engine.
The engineer says that he understood Purifoy to say that he was
going home. The fireman says that Purifoy told him that he
was getting off for the purpose of getting his bicycle, but the
engineer says he did not hear this statement. It seems that Puri-
foy, when he got off the train, got on the bicycle and followed
the log train to the main line. A handcar with some of the em-
ployees on it was just ahead of the log train on its way to camp.
When the log train arrived at the intersection of the spur with the
main track, the fireman got off and threw the switch and the
engine pulled its train of log cars on to the main track and then
backed down the main track past the switch. It was then cut
loose from the cars and the engine and tender went up the main
line again until it got past the switch, when it was backed down
on the spur. Then the engine on the main line went down the
main track and coupled to the cars which had just been brought
in from the spur track, and then the train was pulled back towards
the switch for the purpose of being carried on the main line to
the mill plant at Lester. As the train on the main line approached
the switch, the engineer on the engine on the spur track concluded
that his engine was not in the clear from the passing cars on the
main track, and, without looking back or giving warning of any

kind, he backed his engine and tender for the purpose of clearing
it. During all this time the fireman was still at the switch, pre-
sumably for the purpose of again throwing it to enable the engine
on the spur track to go back on the main track after the train
on the main track had passed the switch. The engineer says that
he did not know Purifoy was behind him on the bicycle, and
when he backed his engine about fifteen or eighteen feet the tender
struck Purifoy and killed him. This occurred about five o'clock
in the evening. It was raining at the time and nearly dark.
Other facts will be referred to in the opinion. The court directed
a verdict for the defendant, and the plaintiff has appealed.

*Powell & Taylor,* for appellants.

1. The testimony is conclusive that the deceased was, in
the use of the velocipede, or "speeder," an invited licensee. But
whether he was a licensee or a mere trespasser, the "lookout stat-
ute" applies. Kirby's Dig., § 6607. And appellees are liable if
he was not guilty of contributory negligence. 135 S. W. (Ark.)
814, and cases cited.

2. Under the evidence adduced, the court was not war-
ranted in holding the deceased guilty of contributory negligence
as a matter of law. The engineer had every reason to suspect
the presence of deceased near his train, and the deceased every
reason to believe that the engineer knew of his presence; and when,
without keeping a lookout and without warning, the engineer
backed the engine, he violated his statutory duty, and was guilty
of gross negligence. These questions of negligence and of con-
tributory negligence were for the jury. 78 Ark. 355. The pre-
sumption is that deceased was in the exercise of due care until
the contrary is shown. *Id.;* 48 Ark. 460; *Id.* 333; 58 Ark. 125;
61 Ark. 549; 85 Ark. 326.

*T. D. Wynne* and *Gaughan & Sifford,* for appellees.

The court correctly held that deceased was guilty of con-
tributory negligence as a matter of law. The proof shows that
the engineer thought deceased had gone home by the dirt road,
and did not know that he was immediately in the rear of the train
or anywhere on the railroad at the time of the accident. One
using the track of a railroad does so at his own peril and in sub-
ordination to the superior right of the railroad company to oper-

ate its trains; and the deceased, whether a licensee or trespasser, was under the obligation to exercise due care for his own protection. 95 Ark. 190, and cases cited.

HART, J., (after stating the facts.) The defendant Mill. Company demurred to the complaint, and excepted to the action of the court in overruling it. The plaintiff, however, has not made any argument on that point in his brief, and, by a familiar rule of practice, the error of the court, if any, in overruling the demurrer will be treated as abandoned.

The sole contention made by the counsel for the plaintiff is that the court erred in directing a verdict for the defendant. In determining this question it first becomes necessary to consider whether or not Purifoy was a trespasser at the time he was killed. We hold that he was not. The evidence shows that, while he was not given permission to use the track bicycle in the first instance, the fact that he was using it was well known to the officials of the railway company as well as to the engineers who ran the trains. The superintendent of the railway company said that it was agreeable to him for Purifoy to use the track bicycle because by this means he could quicker and better look after the business of the company for which he was employed. Hence we hold that he was rightfully on the track of the company at the time he was killed.

This being true, the lookout statute is applicable to this case, and the plaintiff made a *prima facie* case of negligence against the Railway Company when it was shown that Purifoy was killed by the train. The burden to overcome this presumption of negligence was upon the Railway Company. *St. Louis, I. M. & S. Ry. Co.* v. *Standifer,* 81 Ark. 275; *St. Louis S. W. Ry. Co.* v. *Graham,* 83 Ark. 61; *St. Louis, I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 204.

It was the duty of defendant's servants to keep a lookout. The undisputed evidence shows that no lookout was kept, and we can not say, as a matter of law, that, under the facts and circumstances adduced in evidence, the accident would have happened, regardless of the fact of whether or not defendant's servants kept a lookout.

The remaining and most serious question in the case is the contributory negligence of Purifoy. Under the facts and circumstances adduced in evidence, the question is a very close one, but

we are of the opinion that the court erred in not submitting it to the jury. Purifoy told the fireman when he got off that he was going to get his speeder. It is true that the engineer says that he did not hear this, and that Purifoy told him, as he understood, that he was going home. It may be that Purifoy thought that the engineer heard him tell the fireman that he was going to get his speeder, and that they saw him on the speeder following them in; and saw him take his position about fifteen or eighteen feet back of the tender before he was struck by it. It will be noted that the engineer did not notice that he was not in the clear until he stopped and examined clearly the position of his engine with reference to the approaching train on the main track. While the engineer says that he did not know that this would be his last trip, and that he might have had to go back to the woods and bring in some more of the men, other evidence shows that it was nearly dark and raining; that it had been raining throughout the day; that most of the men that worked in the woods had come in on the train of logs; and that some of them came in on a handcar ahead of the engine. The fireman had thrown the switch for the engine to go on the main track, had remained there to throw it for the engine to back again on the spur; and then, it might be inferred, remained there for the purpose of again throwing the switch for the engine to go back again on the main line and go to camp after the train on the main line had passed. It may have been that, under these circumstances, Purifoy thought the engineer was through work for the day and would immediately go back on the main track after the train on that track had passed.

The jury are the judges of the weight of the evidence and of reasonable inferences that might have been drawn therefrom. They might have found that, under the facts and circumstances, Purifoy was justified in taking a position about fifteen feet back of the tender, and that there would be no occasion for backing the engine and tender, or at least, if that was done, that some kind of warning would be given to him. These are the inferences which the jury may have drawn from the evidence, and made the question of the contributory negligence of Purifoy one for the jury.

For the error in directing a verdict for the defendant, the judgment must be reversed, and the cause remanded for a new trial.

KIRBY, J., dissents.

