HARRIS v. McCLINTOCK.

Opinion delivered April 28, 1924.

1. FERRIES—DUTY OF FERRYMAN TO PUBLIC.—Crawford & Moses' Dig., § 4703, relating to a ferryman's duty to his passengers, does not apply to his obligations to the public generally, and, being a reenactment of the common law, creates an additional remedy, but not an additional right.

2. FERRIES—DUTY TO PUBLIC.—Where plaintiff's decedent was drowned by the car in which he was riding being driven off the end of defendant's ferryboat, no relation of carrier and passenger existing between decedent and the ferryman, the only duty the latter owed to decedent was that owed to the public generally.

3. FERRIES—DUTY TO PUBLIC.—The duty which a licensed ferryman owes the public is to provide against any contingencies which may be reasonably anticipated and to take all precautions to prevent any casualty which ordinary foresight could have prevented.

4. FERRIES—DUTY TO PUBLIC.—Where plaintiff's decedent was drowned by driving off the end of a ferryboat at night, mistaking it for a bridge, the failure of the ferryman to anticipate such a casualty was not negligence, it not being a contingency which could have been reasonably anticipated.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark*, Judge; affirmed.

*Murphy, McHaney & Dunaway* and *Isgrig & Dillon*, for appellant.

*Gregory & Holtzendorff, Emmet Vaughan* and *Cooper Thweatt*, for appellee.

HUMPHREYS, J. Appellant, as mother and next of kin of Leon Harris, deceased, and as administratrix of his estate, brought suit against appellee in the circuit court of Prairie County, Southern District, to recover damages in the sum of $22,000, for the death of her intestate, who was drowned in White River, at DeValls Bluff, through the alleged negligence of appellee. It was alleged in the complaint that appellee was negligent in that: first, he had the ferryboat moored to the bank of White River in the center of a much traveled highway, giving it the appearance of a bridge, to any person

unfamiliar with the location of White River or with said highway; second, that there were no chains, ropes, or any other obstructions across either end of the ferryboat; third, that he failed to keep any light or other danger signal on the ferryboat; fourth, that he failed to keep the ferryboat so attended as to pass appellant's intestate in safety, and without detention, across White River.

Appellee filed an answer, admitting that the ferryboat was moored to the bank of White River in the center of a traveled road; that there were no ropes, chains, or other obstructions across either end of same; that there was no light or other danger signal on the boat; and that there was no attendant present at the time; but denied that the failure to take any of the precautionary measures aforesaid constituted negligence in the law, and further denied that the ferryboat would have the appearance of a bridge to one unfamiliar or unacquainted with the highway. By way of affirmative defense he also pleaded contributory negligence on the part of the deceased, Leon Harris.

The cause was submitted upon the pleadings and testimony introduced by the respective parties, which resulted in a directed verdict and consequent judgment for appellee, from which is this appeal.

The facts are practically undisputed, except in one particular. Appellee was a licensed ferryman, operating a ferryboat at a point near DeValls Bluff, on White River. The only dispute is as to whether I. E. McCray, uncle of deceased, was driving the car in a rapid, reckless, and negligent manner, with the consent of deceased, over the highway and onto the ferryboat, without due regard for their safety. The undisputed facts show that I. E. McCray, his brother, and deceased left Little Rock for Memphis about 2 o'clock P. M. on October 10. I. E. McCray was the owner and driver of the car. They arrived at DeValls Bluff at about 6:30 o'clock P. M. It was a cloudy night, and dark. The road from DeValls Bluff to within 200 feet of the ferry is on a dump, ranging from six to twelve feet high, with a crown about six-

teen feet wide. At that point it begins to rapidly decline through a cut, and curves first to the left and then sharply to the right until about one hundred feet of the ferry. From that point it is straight, but declines until it reaches the river. The ferryboat was moored to the bank of the river, in the center of the road. It had an apron at the end, which laid down on the bank and formed an approach to the boat. It also had a railing on each side. The boat was made of wood, was twenty feet wide, and seventy-five feet long. There was no light on the boat, nor any chains, ropes, or other obstructions across the entrance thereto. The ferryman was in a little shack he occupied near the road. The water was from fifteen to twenty feet deep at the bank where the boat was moored. The automobile lights were in good condition, and turned on. The automobile was driven onto the ferryboat without any signal or direction from the ferryman, and off the other end of the boat into the river, without making a stop. The two McCrays succeeded in swimming out, but Leon Harris was drowned. The ferryboat was constructed in the usual way, and was being operated in the customary manner. During its operation, for seven or eight years, no accident of any kind had happened before this one, and no one had taken the ferryboat for a bridge.

The witnesses introduced on behalf of appellant testified that the automobile was driven onto the ferryboat under control of the brakes. The two McCrays testified that they took the ferryboat for a bridge, and, on that account, did not stop before driving onto and over same.

The witnesses introduced by appellee testified that the car was driven down the decline onto and over the ferryboat at the rate of fifteen to twenty-five miles an hour, without making any appreciable stop at the entrance to or upon the boat.

The question arising upon this appeal for determination is whether appellee is exonerated from liability under the undisputed evidence in the case. The trial court so ruled, and the correctness of this ruling is drawn

in question. Appellant relies mainly for a reversal of the judgment upon her allegation that appellee failed to keep his ferryboat so attended as to carry her intestate safely across the river. This allegation is based upon § 4703 of Crawford & Moses' Digest, and relates to the ferryman's duty to passengers. The section, however, has no application to the facts in this case. It relates to the ferryman's duty to his passengers, and not to his obligations to the public generally. The undisputed proof in this case reveals that appellant's intestate was not appellee's passenger. He was not invited or directed to drive upon the ferryboat by appellee or his employees. The statute relied upon is a reenactment of the common-law liability. It creates an additional or cumulative remedy, and not an additional right. *Wells* v. *Steele,* 31 Ark. 219. As there is no statute in this State creating any liability against a licensed ferryman which the common law does not impose, appellant's cause of action, if any exists, must arise out of the common-law liability. Under the common law a ferryman is a common carrier, and is held to the highest degree of care in transporting his passengers and their property. This relation did not exist between appellant's deceased and appellee. The only duty therefore which appellee owed appellant's deceased was the same duty he owed to the general public. The duty which a licensed ferryman owes the public is to provide against any contingency which might have been reasonably anticipated. It is his duty to take all precautionary measures to prevent a casualty which ordinary prudence and foresight could have prevented. The failure or omission to guard against such casualties would render the ferryman liable for negligence. We do not think the omission alleged in this case imposes any liability upon appellee. It was necessary for him to moor his ferryboat to the bank of the river, across the center of the road, to serve passengers. The boat was constructed and operated in accordance with the general custom. It had been operated for seven or eight years under like conditions, without the happening of any casualty.

We do not think appellee could have reasonably antici-
pated that a man or men would drive an automobile onto
and over the ferryboat into the river, in the belief that
it was a bridge. It was a contingency that could not
have been reasonably anticipated. The death of appel-
lant's intestate was the result of the wholly unexpected
act of the driver and his companions. It did not occur in
the natural course of things, but was the result of excep-
tional circumstances. In support of the rule and applica-
tion thereof see *Loftus* v. *Union Ferry Co.*, 84 N. Y. 455;
*Scribner* v. *Long Island R. Co.*, 88 N. Y. 351; 29 Cyc. p.
432.

No error appearing, the judgment is affirmed.