Louise A. WHITE, Petitioner,

v.

ARROW DRILLING COMPANY, Employers Mutual Liability Insurance, and State Industrial Commission of the State of Oklahoma, Respondents.

No. 36759.

Supreme Court of Oklahoma.

Oct. 11, 1955.

Farmer & Kerr, Oklahoma City, Moody & Kennemer, Lindsay, for petitioner.

B. E. Harkey, Don Anderson, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

CORN, Justice.

In this case it appears that shortly after midnight on April 11, 1954, Forrest Ray White, while in the employ of Arrow Drilling Company sustained an accidental injury resulting in his death. His death was the result of an automobile collision which occurred on the highway about one and one-half miles north of the City of Lindsay, Oklahoma, and occurred when decedent drove his automobile against an unoccupied automobile parked along the right hand side of the road.

On April 24, 1954, Louise A. White, surviving widow of deceased claiming to be his sole dependent, filed a claim against Arrow Drilling Company, respondent herein, and its insurance carrier for compensation under Death Benefit Provision of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., in which she states substantially the above state of facts.

The trial commissioner denied compensation on the theory that decedent was not engaged in the course of his employment with Arrow Drilling Company at the time he sustained the accidental injury resulting in his death. The order was sustained on appeal to the Commission en banc.

Louise A. White, hereinafter referred to as petitioner, brings the case here for review, and contends that the order is not supported by the evidence and is contrary to law.

The evidence discloses that decedent was employed by Arrow Drilling Company as a tool pusher and lived in the town of Lindsay, Oklahoma. Arrow Drilling Company had three rigs drilling in that vicinity; rig 21, upon which decedent was tool pusher; rig 18, upon which William T. Stone was tool pusher; and rig 23, upon which Jack Howton was tool pusher. Mr. Stone testified that the duties of a tool pusher were to supervise drilling operations of a well and the employees on that well, and also, included the gathering of information concerning drilling of competing companies' wells. A tool pusher's duties were such that he was subject to call on his employment "twenty-four hours, any time, day or night." Decedent's wife testified there had been occasions when decedent worked all night and all day when the rig was broken down; however, he normally made three trips to the rig daily; at 5:30 in the morning, 3:00 o'clock in the afternoon and 11:00 or 11:30 at night, which were the times the towers changed. Mrs. White told, over employer's objection, of one occasion about a month before the death when she accompanied decedent to a Warren and Bradshaw rig about midnight, where he obtained some drilling information.

At the time decedent was killed all the Arrow Drilling Company rigs, including decedent's rig were on locations south or southwest of Lindsay. Decedent was killed while traveling north at a point about one-half mile north of Lindsay on State Highway No. 76. The hour was either shortly before midnight Saturday, April 10, 1954, or shortly after midnight on the

Sunday following. Decedent was traveling at the time in an automobile furnished by the employer.

Decedent left home about noon April 10th. He went to see Mr. Stone, tool pusher on rig No. 18. He talked with Mr. Stone for about one hour and a half and then took Mr. Stone for a ride in a new automobile which his company had just furnished him that day. They drove out to Mr. Stone's rig then both drove to Mr. Howton's rig, No. 23, and discussed company business. They left Mr. Howton's place about 7 o'clock and decedent took Mr. Stone home. Mr. Stone did not know where decedent went after he left his place nor did he have any information as to why decedent might have been driving north on the highway at midnight, or what he intended to do.

There is no evidence as to decedent's whereabouts from that time until 10:30 that night when he appeared at the Victory Bar in Lindsay where he played shuffleboard with Mr. Butler who lived in Lindsay. They played shuffleboard until shortly before midnight when he left the bar. He did not tell Mr. Butler where he was going and Mr. Butler testified that as far as he knew decedent received no message or telephone call calling him to duty during that time, and Mrs. White testified that no call came for him to the house that night. The evidence shows that the bar is a respectable place, there is no drinking or carousing at the bar. It is simply a place where people meet to play shuffleboard. The evidence also shows that decedent was a sober, industrious man, did no carousing and had no bad habits.

The evidence further shows that at the time in question decedent's rig was drilling a well for Cities Service Oil Company. The district superintendent for that company, Mr. Wise, saw decedent the afternoon preceding his death and discussed generally with him the drilling of the well. He lived north of Lindsay, but had made no appointment to see decedent that night, and knew of no reason why decedent might be coming to see him at midnight, and knew of no later development, indicating that decedent had been looking for him that night.

The evidence further shows that Mr. Wise, late that evening, drove up north of Lindsay to visit with some friends. He left for home a few minutes before midnight, and on his way home he discovered the body of decedent lying along the side of the road. He testified it appeared to him that decedent had driven his automobile into an unoccupied automobile parked along the right side of the road. The Highway Patrol was then called, and the body was removed to a funeral home.

It was stipulated at the trial that the job of tool pusher was a hazardous employment within the Act. That decedent met his death as the result of an automobile accident near Lindsay, and that claimant was the wife of decedent and dependent upon him for support. The employer denied that the death arose out of, or in the course of the employment. This in substance constitutes the evidence in the case.

It will thus be noted that there is no direct evidence as to where decedent intended to go after he left the Victory Bar or what he intended to do or what the occasion was for his driving north of Lindsay where the accident occurred. There is, however, circumstantial evidence indicating that he may have intended to further contact Mr. Wise, who lived north of Lindsay, relative to drilling the Cities Service well which was located south of Lindsay, or that he may have intended to go to the field north of Lindsay to obtain drilling information for the benefit of his employer, since there is evidence to the effect that the drilling company intended to start the drilling of a well in that area within the near future. On the other hand there are circumstances indicating that he was then on a mission of his own rather than on a mission for his employer.

Considering all the facts and circumstances in the case the Commission reached the conclusion that decedent was not engaged in the course of his employment when he sustained the accidental injury resulting in his death, and entered an order denying compensation.

■ We cannot say that there is no competent evidence reasonably tending to sup-

port the order. It will therefore not be disturbed on review.

Order sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD and JACKSON, JJ., concur.

WELCH, J., concurs in conclusion.