United Steelworkers of America *v.* Walden.

5-1521                                        311 S. W. 2d 787

Opinion delivered April 7, 1958.

*Mehaffy, Smith & Williams,* by *William A. Eldredge, Jr.,* for appellant.

*McMath, Leatherman & Woods,* for appellee.

PAUL WARD, Associate Justice.  The principal question presented by this appeal is: Does the record contain sufficient competent evidence to support the finding of the Workmen's Compensation Commission that appellee's husband, Dan Ed Walden, met his death while in the course of his employment?  It is contended by appellant that Walden's death did not *arise out of his employment,* but we think the facts and circumstances of this case are such that, if the principal question is answered in the affirmative, this contention becomes untenable.  Also, appellant makes the contention, that the evidence affirmatively shows Walden's death did not arise out of or in the course of his employment, but we deem it unnecessary to discuss this point separately because all facts and circumstances tending to support it will be considered in connection with the principal question.  The testimony is, for the most part, not in dispute.

The body of Dan Ed Walden, who was at the time of his death and for several years prior thereto an employee of the United Steelworkers of America, was found submerged in a water filled mine, the property of the Aluminum Company of America, on the afternoon of February 29, 1956.  It is more or less assumed, although by no means certain, that Walden met death 25 minutes after 4 o'clock on the morning of the same day because his watch was stopped at that position and because he had last been seen alive by Mr. Guy Bass at about 3

o'clock that morning. The Workmen's Compensation Commission and the Circuit Court, on appeal, held that Walden's death arose out of and occurred in the course of his employment, and appellant prosecutes this appeal for a reversal.

Appellant apparently overlooking no favorable argument or legal precedent, forcefully contends there is no competent evidence to support the Commission's award; that at most there is only a possibility Walden was, at the time of his death, in the course of his employment, and; that the Commission, in reaching its conclusion "has based inference upon inference." It is pointed out that the Commission said: "It is true that Dan Ed Walden's death occurred under mysterious and inexplicable circumstances . . . His reasons for being where he was at the time he was cannot be known with certainty . . . we must make certain inferences from the available evidence." Our attention is also called to the rules announced in *Farmer* v. *L. H. Knight Company*, 220 Ark. 333, 248 S. W. 2d 111, that a claimant must carry the burden of showing death of an employee occurred in the course of his employment, and that "there is no *prima facie* presumption that the claim comes within the provision of the law."

After a careful consideration of all appellant's arguments and an examination of all supporting authorities, some of which we will later mention, we are led to the conclusion that the judgment of the Circuit Court (sustaining the Commission's award) should be affirmed. In justification of that conclusion there is set out below the material facts and circumstances contained in the record.

In summarizing the testimony we may, in some instances, be guided by the rule approved in *Simmon's National Bank* v. *Brown*, 210 Ark. 311, 195 S. W. 2d 539, that; "In determining the sufficiency of the evidence, doubts should be resolved in favor of claimant, and the evidence should be reasonably and liberally construed in his favor."

Dan Ed Walden, as an employee of appellant, was charged with the responsibility of servicing the needs of some 2,000 Union members employed by Alcoa and Reynolds Metal Company engaged in mining and processing aluminum ore in the Bauxite area. Many of these employees lived in the vicinity of Mt. Olive which is approximately 4 miles southeast of Bauxite and some in the vicinity of Sardis which is some 5 miles further in the same direction. In the process of mining ore large pits are dug in the ground and when the deposit of ore is exhausted the pit is abandoned and in many instances it seems these abandoned pits accumulate water. It was in one of these pits, Pit No. 14, that Walden's body was found. This pit is located about 2 1/2 miles southeast of Bauxite, in the general direction of Mt. Olive and Sardis. Benton is located on highway 67 several miles west of Bauxite where Walden lived.

When any trouble affecting Union men arose it was Walden's job to contact the necessary employees and to arrange for meetings designed to effect a settlement, and to contact witnesses. In performance of these duties Walden was on call at all hours. Approximately 85 percent of his work was done at night, and frequently he worked all night. These long hours at night were apparently necessary because some of the Union members worked at night and they could not be contacted while on the job. Sometimes it was necessary for Walden to contact Union members in the early morning hours before they reported for work.

On Wednesday, February 28 (the day before Walden's body was discovered) Herbert Jarrett, who lives at Louisville, Kentucky and who is the Area Director of Public Relations for the Reynold Company, came to Little Rock for the purpose, apparently, of working with Walden and others in the settlement of several Union disputes and particularly to discuss problems relative to a fourth step grievance hearing to be held later that week. When Jarrett contacted Walden on Wednesday morning relative to the above matters, they agreed to go to the races at Hot Springs that afternoon. This they

did in a car driven by Walden but owned and furnished to him by appellant. On their way back from Hot Springs that evening they picked up Guy Bass who lives at Benton and who is the Chairman of Local Steelworkers of America at Reynolds' Hurricane Plant. From Benton the three of them drove to a Motel in Little Rock and discussed Union matters until around midnight when they drove Jarrett to the Marion where he was staying. During the discussion at the Motel relative to the forthcoming grievance meeting it developed that Walden wanted it to be held on Friday, but at Jarrett's insistence it was agreed to advance the date to Thursday. Bass stated that he would have to rearrange his schedule to conform with the new hearing date.

On the way back to Benton, Walden and Bass visited the Hideaway Cafe on the old Benton-Little Rock road which was frequently patronized by Union members. After some time there Walden took a Mrs. Beck, at her request, to where she worked at a cafe on the main Hot Springs-Little Rock highway, thence Walden and Bass went to the latter's home at Benton. At Bass' home he and Walden sat in the car and continued to talk grievance matters until about three o'clock on the morning of Thursday the 29th. At that time Walden left without any explanation of where he was going or what he was going to do, and he was not seen so far as is known until his body was found in the water in Pit No. 14 that afternoon. There is no suggestion or reason to suspect Walden committed suicide.

Based on the above, appellant says that is no substantial evidence to support the Commission's finding that Walden met his death while in the course of his employment, and that the award must have been based on speculation and unfounded inferences. While the question confronting us is a close one, we have reached a different conclusion. There are, we think, facts and circumstances which could lead to no other reasonable inference than the one reached by the Commission. The Commission had a right to consider the circumstances as well as the proven facts and also had the right to

draw all reasonable inferences deducible therefrom. In the *Brown* case, *supra,* we approved this statement: "Circumstantial evidence is sufficient to support an award of the commission, and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required."

One circumstance in addition to those heretofore mentioned is the location of Pit 14 with reference to the Mt. Olive and Sardis communities together with the location and condition of roads in the surrounding vicinity. When Walden left Bass' home he would normally have gone within 2 blocks of his own home in Bauxite to reach Pit 14. The road thus taken was a well improved road until he arrived at a point (hereafter referred to as Point "X") opposite Pit 14 which was approximately ¼ mile to the north. From "X" there is a well improved road running to Pit 14, but the road continuing in a southeasterly direction from Point "X" in the general direction of Mt. Olive and Sardis was not so well improved. A short way before the road reaches Pit 14 it slopes into the water. Walden's car was found several feet out in the water and his body was found several feet away from the automobile. Of course there is no way of knowing to a certainty just why Walden made this trip in the early morning hours or why he took the left hand road at Point "X" or why he drove into the water. It would seem to logically follow, however, that he was either endeavoring to contact Union members preparatory to the meeting the next day, or he was on some other mission not connected with the business at hand. We know of no fact or circumstance indicating the latter. As stated, there is no intimation of suicide and he had the reputation of being a reliable, energetic and conscientious worker. Certainly the circumstances surrounding his death are more compatible with a mission for Walden's Union than with an independent one. This is certainly true since no independent mission has even been suggested. It is common knowledge that sometimes human actions and reactions defy logical explana-

tions. It is pointed out by appellant that there is no testimony in the record of any individual whom he was supposed to see in preparation for the forthcoming meeting. We think it is reasonable to assume that such was the case; otherwise why did he want the meeting put off another day to make the necessary preparations? There is also some slight explanation of why Walden took the wrong road at Point "X." Between Point "X" and Pit 14 there is an old unusable road connecting with the main road to Sardis. It could possibly be that he did not know the condition of this road and meant to use it. Also, if he had continued on at Point "X" instead of turning left he would have found another road turning left about a mile from Point "X". This road also leads to Sardis. It is not unreasonable to assume that he might have been confused as to the road he was taking. If such confusion existed the reason for it is not material.

We have considered the numerous cases, many from other jurisdictions cited by appellant, but find nothing contrary to the conclusion herein reached. In *Industrial Commission of Ohio* v. *Lewis,* 125 Ohio St. 296, 181 N. E. 136, there was positive testimony showing the deceased might have been on an independent mission. The same is true in *Damore* v. *Encyclopedia Americana* (Mo.) 290 S. W. 2d 105, where the award of the Commission was sustained. In the case of *White* v. *Arrow Drilling Company* (Okla.), 288 P. 2d 754, the facts, in many respects, are amazingly similar to those of the case under consideration. There the Commission denied an award and the Supreme Court affirmed the Commission, but the opinion contains language which distinguishes it from this case. The court said: "On the other hand there are circumstances indicating that he (deceased) was then on a mission of his own rather than on a mission for his employer."

As pointed out by appellant, considerable liquor was consumed by Walden, Bass and Jarrett while they were together, and the Commission would have been justified in disbelieving much of Bass' testimony be-

cause he apparently consumed most of the liquor. However, a deletion of most of his testimony would not adversely affect appellee, and there is little indication that Walden was drunk. In fact it is not urged that he was.

Appellant admits Walden was within the scope of his employment up until he and Bass left Jarrett at the Marion hotel around midnight, but submits that he departed therefrom when he left the main highway to visit the Hideaway Cafe and never returned to it, but we do not agree. Considering the nature of Walden's employment and the fact that Union employees frequented the place, the Commission might have concluded he went there for some purpose related to Union business. At any rate, the Commission would have been justified in finding Walden returned to his employment when he took Bass home and there continued discussing matters they had been discussing with Jarrett.

Under the well established rule that the Commission's award will be sustained if it is supported by substantial competent evidence, we affirm the judgment of the trial court.

Affirmed.