ALUMINUM COMPANY OF AMERICA *v.* WALDEN.

5-1788                                           322 S. W. 2d 696

Opinion delivered April 6, 1959.

*Rose, Meek, House, Barron & Nash, O. Wendell Hall, Jr.* and *Wright, Harrison, Lindsey & Upton,* for appellant.

*McMath, Leatherman & Woods,* for appellee.

PAUL WARD, Associate Justice. This litigation was initiated by appellees, the widow and children of Ed Walden, to recover damages for his death which, as they allege, was caused by the negligence of appellant, Aluminum Company of America (hereafter referred to as Alcoa). The alleged acts of negligence on the part of Alcoa relied on by appellees will be set out later in this opinion. We deem it sufficient to set out only a brief summary of the facts and events preceding Walden's death and bearing upon the issues involved for the reason that they have twice been recounted in recent decisions of this court. See: *Walden* v. *Automobile Owners Safety Insurance Company,* decided March 31, 1958, 228 Ark. 983, 311 S. W. 2d 780, and *United Steelworkers* v. *Walden,* decided April 7, 1958, 228 Ark. 1024, 311 S. W. 2d 787. We will hereafter refer to the deceased as Walden.

Alcoa has for many years been extensively engaged, among other things, in mining bauxite in Saline County.

Incident to these operations they have opened numerous mines or quarries and have built private roads thereto leading from the public roads nearest by. It is necessary that these private roads be substantially constructed because they are used by heavily loaded trucks in carrying the bauxite ore from the mines. When the ore is exhausted in a mine or quarry it is abandoned and another is opened at a different site. Walden was an employee of Alcoa from 1935 until March 1946, in the capacity of an Oiler Foreman. As such, it was his duty to visit the several mines in order to oil the mining equipment. From 1946 to 1948 or 1949, Walden worked for Reynolds Metals Company as an operator in one of their chemical plants in which capacity he made frequent trips in the general area of Alcoa's operations. Then Walden went with United Steelworkers of America as an International Staff Representative and served in that capacity until his death. When a labor dispute arose between a member of the union and the employer (in this instance Reynolds Metals Co.) and preliminary efforts at settlement failed, it was Walden's duty to help conduct what is called a Fourth Step hearing. It appears that Walden's job was to make the necessary preparations for the Fourth Step hearing by securing the attendance of desired witnesses. Herbert Jarrett of Louisville, Kentucky, is employed by Reynolds as a Director of Labor Relations serving nine states including Arkansas and, representing management, he worked with Walden representing labor in conducting such hearings. Guy Bass, who lives at Benton, is Chairman of Local 333 of United Steelworkers which has jurisdiction over one of Reynold's plants.

It seems that a Fourth Step hearing had been set for Friday, March 2, 1956, requiring witnesses who lived in the general area of the operations conducted by Alcoa and Reynolds, but on Tuesday morning, February 28, 1956 Jarrett (who had arrived in Little Rock the day before) called Walden at his office in Benton. Pursuant to this call Jarrett met Walden at his office and discussed the advisability of setting the hearing up one day, *i.e.* for Thursday, March 1st. However it was deemed necessary

to consult Bass about any such change, but he could not be contacted until about 7:30 that evening, when the three of them drove to Little Rock. There they discussed the meeting until about midnight and decided to have it on Thursday. Bass and Walden then drove to Bass' home in Benton where they sat in Walden's car and discussed matters until about 3:00 a.m., Wednesday, February 29th. Walden then left and was not seen again until his body was found submerged in the water in Pit No. 14, one of the abandoned mines belonging to Alcoa, about 8:00 p.m. that same day. His car had been found in the water of the pit about 1:30 p.m.

*Location of Pit No.* 14. The public road runs east from Benton about 7 miles to Bauxite, thence it continues easterly through the area of Alcoa's mines to small settlements in various parts of Saline County. About two and one-half miles east from Bauxite there is a private road built by Alcoa which leaves the public road and runs north some 1880 feet to Pit No. 14 where Walden's body was found.

For convenient reference hereafter we will use the following designations: The letter A represents a portion of the public road near Bauxite; B represents the intersection where the private road leaves the public road; C represents a place on the public road east of B, and; P designates the location of Pit No. 14.

Appellees' complaint predicated liability on the following allegations, in substance: (a) Alcoa failed to erect a sign at B warning travelers that a deep water-filled pit was only a short distance away, in view of the fact that the road from B to P appeared to be a public road; (b) Alcoa failed to place the sign at B reading "Private Road", in a conspicuous spot; (c) Alcoa failed to erect a barricade where the private road led directly into the water-filled pit; (d) Alcoa failed to drain the water from Pit No. 14, and; Alcoa failed to erect a sign at B advising travelers that the private road led directly into a water-filled pit. Alcoa's answer was a general denial and that Walden's death resulted from his own negligence or that he assumed the risk.

After the introduction of testimony and numerous exhibits, the cause was submitted to the jury which returned a verdict in favor of appellees. On appeal, appellant relies on only one point for a reversal. This point, as stated by appellant, is as follows: "Appellants only point is that its request for an instructed verdict should have been granted because there is no substantial evidence that appellant was guilty of negligence."

Appellant's principal argument is that Walden was a trespasser, or at least only a licensee, and that it owed Walden no duty except not to injure him after becoming aware of his presence on the private road. There was no contention that appellant knew of Walden's presence on the private road on the occasion in question. We agree with appellant that if Walden was a trespasser or a licensee then no liability has been shown against Alcoa in this case and the judgment should be reversed and the cause dismissed. In the above connection the law in this state appears to be settled beyond any question. In *Garrett* v. *Arkansas Power & Light Company,* 218 Ark. 575, 237 S. W. 2d 895, we quoted from *Knight* v. *Farmers & Merchants Gin Co.,* 159 Ark. 423, 252 S. W. 30, the following statement:

"In all our decisions on the subject — and there are many — we have adhered to the rule that one who goes upon the premises of another as a mere licensee is in the same attitude as a trespasser so far as concerns the duty which the owner owes him for his protection; that he takes his license with its concomitant perils, and that the owner owes him no duty of protection except to do no act to cause his injury after his presence there is discovered."

It is the contention of appellees, however, that Walden, under the facts and circumstances of this particular case, was not a trespasser when he drove upon the private road and into Pit No. 14, but that he was an *implied invitee.*

An array of authority leads us to agree, in principle, with the above contention of appellees. Section 367 of

*Restatement of the Law, Torts,* states the applicable rule this way:

"Dangerous conditions upon Land Appearing To Be A Highway. A possesor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."

Under the above section appear these pertinent comments:

"a. One whom a possessor of land intentionally or *negligently misleads* into believing that part of his land is a public highway, is entitled to expect that the possessor will afford him a security similar to that which he would be entitled to expect were the land actually a highway." (Emphasis added).

"c. The rule stated in this Section applies not only where the possessor of land has paved a strip of his land adjoining the highway or has otherwise dealt with it so as to make it appear to be part of the highway, *but also where he has so constructed a private road branching off from a public highway that he should realize that persons traveling on the highway would reasonably regard it as a continuance thereof.*" (Emphasis added)

"d. In addition, the possessor, having misled others into believing that part of his premises is a public highway, is under the same duty to them in respect to the maintenance of the rest of his land adjacent thereto and in respect to the activities conducted thereon as though such part were *actually a public highway.*" (Emphasis added).

The same rule of law is stated by Prosser on Torts, 2nd edition at page 429 this way:

"Likewise, if he so maintains a part of his land that it appears to be a highway, as where he paves a strip next

to the street, or *gives a private way the appearance of a public one,* he must use reasonable care to see that there is no danger to those who are misled into using it. It is often said in such cases that there is an implied 'invitation' to enter, but the true basis of liability seems to be the misrepresentation as to the character of the property.'' (Emphasis added.)

In the case of *Southern* v. *Cowan Stone Co.,* 188 Tenn. 576, 221 S. W. 2d 809, where the factual situation was similar to that of this case, the Court, after quoting from said Section 367 and from *Prosser,* used this approving language:

''The rule above set forth clearly seems the fair, reasonable and humane view to take. Why should one be allowed to mislead either intentionally or through *negligence,* another to his harm and not be answerable therefor?'' (Emphasis added).

Sustaining the same principle are: *Barlow* v. *Los Angeles County Flood Control Dist.,* 96 Cal. App. 2d 979, 216 P. 2d 903; *Concho Const. Co.* v. *Oklahoma Natural Gas Co.,* 201 F. 2d 673, and; *Mo. Pac. Ry. Co.* v. *Riley,* 185 Ark. 699, 49 S. W. 2d 397.

As we understand appellant's position it agrees with the principle of law above set forth, but ably contends that the facts and circumstances of the case under consideration do not bring it within that principle. Ordinarily of course such an issue would be for a jury to decide but appellant says, and necessarily must say, the evidence in this record is such that the issue becomes one of law. In other words appellant, as before noted, takes the position that there is no substantial evidence upon which to submit the issue to a jury. If the question was properly presented to the jury, then of course appellant cannot prevail because no objection has been raised as to any instructions. The principal question remaining for consideration then is whether a jury question is presented by the record.

After careful consideration and deliberation we have concluded that the record discloses substantial evidence

upon which the jury could find Walden was an implied invitee on the private road in question or, to the same effect, that he was misled into believing, acting as a reasonable person under the circumstances, the private road was a continuation of the public road. In pointing out portions of the evidence in support of the conclusion we have reached we feel that a complete detailed disclosure would unduly extend this opinion and add little to its worth as a precedent. This is particularly true since, as heretofore stated, most of the facts are contained in two former opinions.

Many different phases of the primary issue were presented to the jury under the numerous instructions given by the court. Viewing the evidence, as we must, in the light most favorable to appellees, there is, we think, substantial evidence from which the jury could find: (a) That Walden drove over the private road at night; (b) That he was not under the influence of liquor; (c) That he was misled into believing he was on the public road; (d) That he did not assume the risk by reason of his familiarity with the private road, and: (e) That his death was the result of appellant's negligence.

(a) As recognized by both sides, appellees would be cast into a more favorable position if Walden was traveling at night when he ran his car into Pit No. 14. Several facts and circumstances indicate such was the case. He left Benton about 3:00 a.m., his watch was stopped at 4:30, his car was found at 1:30 p.m., and there is no evidence anyone saw him in the meantime. There is evidence from which it could be reasonably concluded that he was engaged in contacting individuals in the vicinity before they went to work preparatory to the meeting the next day.

(b) If Walden was under the influence of liquor it would indicate he was not acting as a reasonable man, or it could be considered as contributory negligence on his part. The evidence, however, does not necessarily indicate such was the case. The weight of the testimony indicates, we think that he was not under the influence of

liquor, and certainly there is substantial evidence to that effect.

(c)   It is undisputed that the public road from A to B is approximately 40 feet wide, is gravel surfaced, and well defined.   Likewise it is undisputed that the private road, where it leaves the public road, is of the same formation, description, and width as the public road.   It is significant also that the continuation of the public road from B to C is of inferior construction and very narrow.   It is referred to by both sides as an "almost one-way road."   At point B there was, at the time of Walden's death, a relatively small sign reading "Private Road" located at the left side of the public road at the point where it was intersected by the private road. There is, however, evidence that the sign was not readily visible to one approaching from the west on the right (proper) side of the public road.   The road at the intersection is about 50 feet wide.   Due to the width of the road and the location and size of the sign it could be reasonably inferred that it might not be revealed by the headlights of a car at night in making a turn to the left.

(d)   We are unable to say, as a matter of law, that Walden assumed the risk involved in traveling on the private road.   Appellant feels otherwise for they think the evidence shows conclusively he was familiar with this road.   It is true that Walden did have numerous occasions to and did visit Pit No. 14 while he was working for Alcoa from 1935 to 1946.   However that was 10 years before his death and there is no positive evidence that he had visited it since, or that the road and the mine were in the same condition in 1956 that they were in 1946.   The evidence shows that the mine was flooded in 1954 or the early part of 1955, and it was not shown that Walden was aware of that fact.

Considerable importance is attached to the fact that the moon was shining on the night in question, but that was a circumstance which could properly be argued to the jury to show Walden was himself guilty of contributory negligence.

(e) Assuming, as we must, that the jury resolved all the above matters favorably to appellees, and assuming as we may that the jury found Walden to be an implied invitee, it appears to us that the jury was justified in finding appellant was guilty of negligence which led to Walden's death in failing to erect proper warning signs on the private road which had the appearance of a public road, and in allowing Pit No. 14 to remain flooded for several months without some kind of a barricade or warning sign at the entrance to the mine. It is conceded that the private road ran directly into the water-filled pit on a decided downgrade for the last 80 feet. The case of *Helena Gas Co.* v. *Rogers,* 98 Ark. 413, 135 S. W. 904, involved a disputed question of fact whether appellant had exercised the care required by law in warning against the hazards of an excavation, and this court said it was a question for the jury.

Although appellant makes no serious contention that Walden committee suicide yet considerable testimony was introduced tending to create the impression that he might have extricated himself from the water had he walked in the direction of the bank instead of away from it into deeper water. This again, was a matter which addressed itself to the jury under proper instructions of the court.

We have carefully considered the numerous decisions referred to in appellant's excellent briefs in apparent conflict with the conclusion which we have reached herein, but they are, we find, distinguishable on the facts, and it would serve no useful purpose to discuss them. As we have said many times, where questions of fact are involved, each case must be decided on its own set of facts and circumstances. There is one case, however, cited by appellant which gave us the most concern. In *Harris* v. *McClintock,* 164 Ark. 145, 261 S. W. 29, this Court held as a matter of law that a ferry boat operator was guilty of no negligence in failing to put up ropes, chains, lights, or other obstruction across the front of the boat while it was moored to the bank of the river at night to warn or protect prospective users. There the court said:

"We do not think appellee could have reasonably anticipated that a man or men would drive an automobile onto and over the ferryboat into the river in the belief that it was a bridge. It was a contingency that could not have been reasonably anticipated. The death of appellant's intestate was the result of the wholly unexpected act of the driver and his companions. It did not occur in the natural course of things, but was the result of exceptional circumstances."

Without indicating our agreement with that decision, we think it also differs materially from the case under consideration in that the boat itself constituted an efficient warning to a traveler that danger lay immediately ahead which could hardly be ignored by a reasonable person. The court could have taken the view that a reasonable person could not ignore such a warning without himself being guilty of some slight degree of contributory negligence which would have barred recovery under the law as it then existed. The case under consideration however was tried under Act 191 of 1955 (later repealed by Act 296 of 1957) whereby any degree of contributory negligence, however great, was not a bar to recovery.

Appellant, pursuant to the chief contention that there is no substantial evidence to support the verdict of the jury, makes the argument that to sustain the judgment it is necessary to base it on a pyramid of inferences. In this connection it points out there is no positive proof that Walden entered the private road and the water-filled pit during the nighttime, that he was traveling from the direction of Bauxite when he entered the private road, that he died at the time his watch stopped, or that he did not commit suicide. The answer to this argument is that it is within the province of the jury to draw certain inferences from facts and circumstances, as we have frequently held. See: *Purifoy* v. *Lester Mill Company,* 99 Ark. 490, 138 S. W. 995, and *Phillips Cooperative Gin Co.* v. *Dewey Goshen,* 230 Ark. 270, 322 S. W. 2d 68, and the cases cited therein.

It is therefore our opinion that the judgment of the trial court must be, and it is hereby affirmed.

Affirmed.

McFADDIN, J., concurs.

GEORGE ROSE SMITH, J., not participating.