Fine Nest Trailer Colony *v.* Reep.

5-2743                                     360 S. W. 2d 189

Opinion delivered September 24, 1962.

*Riddick Riffel,* for appellant.

*Cooper Jacoway,* for appellee.

Sam Robinson, Associate Justice. This is a workmen's compensation case; the issue is whether the death of the employee, Charles A. Reep, arose out of and in the course of his employment as secretary, manager, and salesman for the Fine Nest Trailer Colony, Inc. He was burned to death in a house trailer. The Workmen's Compensation Commission denied compensation, holding that Reep's death did not grow out of and in the course of his employment. The claimant appealed to the Pulaski Circuit Court, Second Division, and there the order of the Commission denying compensation was reversed. The employer has appealed to this Court.

At about 3 o'clock p.m. on the first day of March, 1958, George W. Tucker went to the Fine Nest place of business in North Little Rock with the intention of buying a house trailer if he could find one that suited him. He had known Reep for a long time and had bought a house trailer from him on another occasion.

Reep showed Tucker the trailers Fine Nest had on its lot in North Little Rock, but was unable to sell him one of those. At about 4:30 p.m. they got into a company

truck and went to Reep's home where Reep talked to his wife for a few minutes. Reep and Tucker then returned to the Fine Nest place of business where Tucker got his car. Reep continued to drive the company truck and they went to Jack and Jill's trailer place on the old Benton Highway. Reep knew of a trailer for sale there that might suit Tucker, but after looking over the trailer at Jack and Jill's, Tucker decided it was not what he wanted.

Reep owned a tract of land west of Little Rock where he had a few head of cattle. At this location he had a trailer belonging to the Fine Nest that he and his wife had been using two or three times a week for about eleven months. He had the trailer with the knowledge and consent of his employer and had shown it to prospective buyers on other occasions. Reep asked Tucker to go out and look at the trailer at the Reep place. Tucker did not want to go. He did not want to put Reep to the trouble of going out there, but finally consented when told by Reep that he was going out there to feed his cattle regardless of whether Tucker went along.

On the way out to the place where the trailer was located, Reep stopped at a store and bought a steak.

The first thing they did when they got to the Reep place was to enter the house trailer and light a fire in a kerosene heating stove. Reep put kerosene into the stove from a five-gallon can he kept under the house trailer. They then went to look at Reep's minnow ponds, walked across the road to look at a small piece of land that Reep was thinking about buying, fed the cattle, and returned to the house trailer. The weather was cold, but it was then warm in the trailer.

Tucker had been familiar with house trailers for 25 years; he took his time and looked the trailer over carefully. Reep agreed to put in a new commode and paint the trailer on the outside. Tucker offered $2,200.00 for it, Reep accepted the offer, and the sale was made on that basis. Tucker was to pay part in cash and the balance in monthly installments. They were to meet the next day at 11 a.m. at the Fine Nest place of business and attend

to the details of the sale. The sale was made about 8:20 or 8:30 and Reep wanted Tucker to stay and eat, but Tucker declined and returned to the city.

A little over an hour later, some of Reep's neighbors noticed that the house trailer was on fire. The trailer was destroyed and Reep burned to death. The remains of his body were found near the center of the trailer, about where the butane cook stove was located.

This is not a case of one side introducing evidence to prove one set of facts and the other side bringing evidence to prove the opposite. The only point at issue is the inference to be drawn from the undisputed evidence. If a reasonable inference is deducible from the evidence that Reep's death did not grow out of and in the course of his employment, the decision of the Commission denying compensation must be affirmed. On the other hand, if the only reasonable inference to be drawn from the evidence is that the death grew out of and in the course of the employment, then the judgment of the Circuit Court must be affirmed.

In *Frank Lyon Co.* v. *Oats,* 225 Ark. 682, 284 S. W. 2d 637, this Court quoted with approval, as follows, from Snyder on Workmen's Compensation, Permanent Edition, Vol. 7, P. 1665: "Where the trip or attendance is one which the employer ordered or directed, or is for the sole benefit of the employer, *or is to the mutual advantage of both the employer and his employee,* compensation may be recovered." (Our italics.)

To sustain the contention that Reep was not acting in due course of his employment at the time of his death, the appellant employer cites *Marks Dependents* v. *Gray,* 251 N. Y. 90, 167 N. E. 181. We think, however, that this case really sustains the position of the appellee in the case at bar. There, Mr. Justice Cardozo said: "To establish liability, the inference must be permissible that the trip would have been made though the private errand had been cancelled . . . The test in brief is this: If the work of the employee creates a necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own."

Reep had been working with Tucker since three o'clock in the afternoon in an effort to sell him a trailer. Not only had he shown Tucker all the trailers on the Fine Nest lot, but had taken him to the Jack and Jill place to show him a trailer. Tucker did not want to go to the country to look at the trailer out there, but Reep prevailed on him to do so. There is no reason whatever to believe that Reep would not have done the same thing even if there had been no cattle there to be fed. The work of the employee created a necessity for the travel. He could not show Tucker the trailer without going out there.

The least that can be said is that the trip was for the mutual benefit of the employer and employee. There is no evidence in the record going to show that Reep did not intend to return to the city that night. Mr. and Mrs. Reep had intended to go to the house trailer that day, but the weather was bad and Mrs. Reep had a cold. Without objection, Mrs. Reep testified: "He (Mr. Reep) came by the house with Mr. Tucker to take him out, and I said I couldn't go, and he said he would come on back."

There is only one reasonable inference to be drawn from the evidence, and that is that after making the sale of the trailer, Reep stayed at the trailer to cook and eat the steak he had bought. It will be recalled that he invited Tucker to stay and eat with him, but Tucker declined. Moreover, it will be recalled that Reep and Tucker were to meet at the Fine Nest place of business the next day at 11 a.m. and attend to the necessary details of the sale. Of course the trailer would have to be brought in to the place of business in order that the repairs agreed upon could be made. Reep was driving a company truck equipped to tow house trailers. This truck was not furnished him for his personal business. Mr. Baney, a long time employee of Fine Nest, testified that he had never known of Reep driving the truck home at night.

Certainly if, at the time of the mishap, Reep was disconnecting the gas and butane stoves and making the trailer ready so he could tow it to the city, he was acting within the course of his employment; and if he was cooking his steak he was still within the course of his employ-

ment. The undisputed evidence is that the salesmen were expected by Fine Nest to stay with a customer and not let a mealtime interfere. In order to carry out this policy, the company had cooking facilities at the place of business where the salesmen could prepare their meals when they were not with a customer. On the day in question, as late as 8:30 p.m., Reep had not eaten his evening meal.

Reep's duties as a salesman required him to travel over the State of Arkansas, and even into other states. One of his purposes in travelling to the house trailer was to sell it, and he did sell it. The case of *Johnson Auto Co.* v. *Kelley,* 228 Ark. 364, 307 S. W. 2d 867, involved the death of an automobile salesman. The issue was whether the death grew out of and in the course of his employment. There the Court said: ''Kelley's course of employment for the purpose of workmen's compensation, like that of the ordinary travelling salesman, covered both the time and place of travelling, as well as the selling of the goods.'' We think the same principle applies in the case at bar.

Affirmed.