GRACE v. MT. HOLLY LUMBER CO.

5-3570                                    390 S. W. 2d 105

Opinion delivered May 24, 1965.

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore,* for appellant.

*Mahony & Yocum,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a workmen's compensation case. Marvin Grace died on March 18, 1963, as a result of serious injuries received in a traffic mishap on December 27, 1962. A claim was filed for temporary total disability from the date of his injury until his death; and another claim filed by his widow and minor child (the present appellants) for death benefits. The claims were against the alleged employer, Mt. Holly Lumber Company, and its insurance carrier (appellees here). The two claims were consolidated for hearing before the Commission and were resisted[1] on the ground that the injuries and consequent death of Marvin Grace did not arise out of and in the course of his employment.

The case was heard by the Referee, who disallowed the claims; and the Full Commission likewise disallowed the claims, on the basis that the injuries and death did not arise out of and in the course of employment. The Circuit Court affirmed the Commission; and the case is here on appeal.[2]

---

[1] The claims were also resisted on another alleged ground: that Marvin Grace was an independent contractor. We forego any discussion of the independent contractor matter because the Commission rested its order, adverse to the claimants, solely on the ground that the injuries and death did not arise out of and in the course of the employment.

[2] Appellants state their point in this language:

"Marvin Grace suffered a fatal accident which arose out of and in the course of his employment and the Commission's decision other-

520

Marvin Grace lived near Mt. Holly in Union County. In October 1961 he commenced to work for the Mt. Holly Lumber Company, being engaged in the work of "log banking." The contract between Mr. Grace and Mt. Holly was entirely oral. The manager of Mt. Holly would go with Mr. Grace to a tract of timber and offer Mr. Grace the opportunity to "bank" the cut logs along the roadside at a designated point. Mt. Holly paid a total of $14.00 per thousand feet for having the trees cut into logs and the logs "banked." Five Dollars of the Fourteen Dollars was paid to the cutter; and Nine Dollars of the Fourteen Dollars was paid to the "log banker." If Mr. Grace accepted the offered work, then he would undertake the job of "banking" the logs, which consisted in dragging the logs with tractors from the place, where the tree had been cut, to the designated point on the roadside. To accomplish this "log banking" Mr. Grace used his own two tractors and employed his own helper.

Mt. Holly was careful to see that there was full compliance with the Wage and Hour Law of the United States. So Mt. Holly paid Mr. Grace's helper $1.25 per hour for each hour that the helper worked, and likewise paid Mr. Grace $1.25 per hour for each hour that he worked. Each week Mr. Grace would deliver the time to the manager of Mt. Holly and from the "time checks" of Mr. Grace and his helper there were deductions made for Social Security and withholding tax. After issuing the

wise is not supported by substantial evidence.

"(A) When he was killed Marvin Grace was on a trip he made for the mutual benefit of the Mt. Holly Lumber Company inasmuch as it was for the purpose of obtaining parts to repair the tractors and/or for the purpose of trading the tractors to be used exclusively in his work for Mt. Holly Lumber Company.

"(B) An accident that occurs while an employee is in the process of securing workable equipment 'arises out of and in the course of his employment.'

"(C) The fact that Marvin Grace had not been assigned a new tract of timber to 'bank' does not defeat his status as an employee and is no basis for concluding his death did not 'arise out of and in the course of his employment.'

"(D) The Workmen's Compensation Act should be liberally construed and all doubts should be resolved for the claimant.

"(E) This Court has consistently held that when a Commission denial of benefits is not supported by substantial evidence it will be reversed."

"time checks," if any amount remained from the $9.00 per thousand for "log banking" this balance was paid to Mr. Grace in a separate check each week; and from this "balance check" there were deductions for workmen's compensation premiums on Mr. Grace and his helper, as well as other deductions authorized by Mr. Grace. One of these deductions consisted in the time payments due by Mr. Grace on his tractors. He had at one time purchased some tractors from a third party, but later had purchased two tractors from Mt. Holly and had authorized Mt. Holly to withhold $1.50 per thousand from each "balance check" to apply on the purchase price of the tractors. Keeping the tractors in good working condition was at the expense and responsibility of Mr. Grace.

On December 26, 1962 Mr. Grace had completed all work on the assigned tract of timber, and no new tract of timber had been agreed upon for Mr. Grace to "log bank." Mr. Grace had experienced some difficulty with the tractors as regards cranking; and on December 27, 1962 he asked his neighbor, Harold King, to drive with him in Mr. Grace's automobile to Magnolia, where Mr. Grace would see about trading the tractors for others. The two men went to Magnolia but Mr. Grace made no trade there; and so the two drove on to Haynesville, Louisiana, where Mr. Grace talked to a tractor dealer in that city. Finally it was thought best for Mr. Grace to put one tractor in good condition by taking the good parts from the other and then consider trading the discarded tractor. No trade was made. Mr. Grace and his friend, Mr. King, started the return trip from Haynesville to Mt. Holly, and the traffic mishap occurred which resulted in Mr. Grace's injuries and subsequent death.

On the foregoing facts, and others in evidence, the Referee first, and the Full Commission secondly, held that Mr. Grace's injuries did not arise "out of and in the course of his employment" as those words are used in our Workmen's Compensation Act (Ark. Stat. Ann. §81-1302(d) [Repl. 1960]. We cannot say that the Com-

mission's findings are erroneous.[3] Mr. Grace's work had

[3] The Full Commission found:

"1. That on December 27, 1962, Marvin Grace sustained an accidental injury when he was involved in an automobile accident while driving his personally owned automobile after leaving Haynesville, Louisiana, en route back to his home near Sparkman, Arkansas.

"2. That the purpose of Marvin Grace's trip to Haynesville, Louisiana, was to attempt to trade his tractors.

"3. That on December 26, 1962, Marvin Grace completed the work he was doing for respondent employer, Mount Holly Lumber Company, and just when he would have resumed wok on another tract of timber was not known, and Marvin Grace had not made any agreement to work after December 26, 1962.

"4. That on December 27, 1962, the relationship of employer and employee did not exist between Mount Holly Lumber Company and Marvin Grace nor was there any other relationship such as an independent contractor relationship." On these findings the Commission concluded:

"We are of the opinion that the preponderance of the evidence clearly establishes that the purpose of Grace's trip to Haynesville, Louisiana, on December 27, 1962, was to see about trading his tractors and said trip was not for the purpose of purchasing parts for said tractors. While on such trip Grace was involved in an automobile accident while riding in his personally owned automobile after leaving Haynesville, Louisiana. We are, therefore, of the opinion that Grace's accidental injury did not arise out of *and* during the course of any employment he may have previously had with Mount Holly Lumber Company.

"Section 2 (d) of the Act (Section 81-1302 (d) Ark. Stats.) provides: ' "Injury" means only accidental injury arising out of and in the course of employment, including occupational diseases as set out in Section 14 and occupational infections arising out of and in the course of employment.'

"This Commission, as well as the Arkansas Supreme Court, have held on numerous occasions that to be compensable, the injury must not only arise out of, but must also occur during the course of the employment. Both elements must be present. The terms 'out of' and 'in the course of' are used conjunctively. 'Out of' denotes the origin or cause of the accident. 'In the course of' identifies the time, place, and circumstances. In our opinion, Grace's accidental injury neither arose out of nor during the course of any employment he may have had with the respondent employer.

"The uncontradicted evidence in this case establishes that a separate agreement was made between the respondent employer and Marvin Grace on each separate tract of timber; that if Grace did not choose to work a particular tract, he had a right to decline; that the work on the last tract of timber Grace worked by agreement was completed by him on December 26, 1962. No additional agreement as to another tract of timber had been agreed upon between Grace and the respondent employer. In fact, there is no evidence that another tract had even been discussed by the parties. We believe a reasonable inference to be drawn from the testimony is that when another tract of timber was ready to be harvested at some uncertain and unknown date in the future, Grace would have been given the opportunity to accept or decline skidding and banking the logs on that tract. We, therefore, are of the Opinion that on December 27, 1962, Grace was not acting in the scope of any relationship he may have had with the respondent em-

been completed on the agreed tract of timber on December 26th and there had been no new tract agreed upon between the parties. While he was thus ''between jobs'' he decided to see about having some kind of work done on his tractors. He was not sent to Magnolia or to Haynesville. He went in response to his own desires. He was not paid so much per hour for the day that he made the trip: he was only paid so much per hour while he was at work in ''log banking'' the timber. It is true that he left his tractors in the woods on December 26th; but all the evidence shows that this was not to do any further work in the woods but merely because any tract later agreed upon might be close to where the tractors were.

There was testimony to support the Commission's findings of fact, and the conclusions of the Commission are supported by the findings of fact. The appellants cite us to many cases from this and other courts. Some of the cases from our Court are: *Fine Nest Trailer Colony* v. *Reep,* 235 Ark. 411, 360 S. W. 2d 189; *United Steel Workers* v. *Walden,* 228 Ark. 1024, 311 S. W. 2d 787; and *Frank Lyon Co.* v. *Oates,* 225 Ark. 682, 284 S. W. 2d 637. In all of these cases there existed the relationship of employer and employee at the time of the injury received by the workman. But in the case at bar there was evidence that the relationship had ceased to exist when one tract of timber had been completed and no new tract of timber had been agreed upon to re-establish the relationship.

The appellants cite a variety of cases from other jurisdictions; but we have repeatedly held that the injury must arise ''out of and in the course of the employment''; and we conclude that the Commission committed no error in its conclusions since there was no employment after December 26th, and the injury occurred on December 27th when Mr. Grace was on a mission of his won.

Affirmed.

ployer so as to make Mount Holly Lumber Company liable for the unfortunate accident that befell him on that date. Claimants' claims are therefore denied and dismissed.''